**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

ARK DEVELOPMENT/OCEANVIEW, LLC

                                            Case No:  11-20382-JKO

               Debtor.                           Chapter 11

_____/


**DISCLOSURE STATEMENT FOR**
**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY**
**ARK DEVELOPMENT/OCEANVIEW, LLC**



July 18, 2011


Philip J. Landau, Esquire
Lenore M. Rosetto, Esquire
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile:  (561) 998-0047
Email: plandau@sfl-pa.com
Email: lrosetto@sfl-pa.com

**ATTORNEYS FOR DEBTOR**

## EXHIBIT INDEX

**EXHIBIT A:** Chapter 11 Plan

**EXHIBIT B:** Proposed Order Approving Stipulation

**EXHIBIT C:** Claims Analysis

**EXHIBIT D:** List of Potential Voidable Transfers

**DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY
ARK DEVELOPMENT/OCEANVIEW, LLC**

> **THE DEBTOR RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.**

## I.      INTRODUCTION

Ark Development/Oceanview, LLC (the "Debtor") provides this Disclosure Statement (the "Disclosure Statement") to all of Debtor's creditors and equity interest holders in order to permit such creditors and equity interest holders to make an informed decision in voting to accept or reject the Chapter 11 Plan Proposed By Debtor (the "Plan") [D.E. 62] filed on July 18, 2011 with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in connection with the above-captioned case (the "Chapter 11 Case"). A copy of the Plan is attached to this Disclosure Statement as Exhibit "A." Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims against or Equity Interests in Debtor in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtor's creditors and stockholders, to make an informed judgment whether to accept or reject the Plan. The Disclosure Statement may not be relied upon for any purpose other than that described above.

**THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED. THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS PROPERTY) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF THE DEBTOR AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING DEBTOR OR ITS FINANCIAL CONDITION IS ACCURATE OR COMPLETE.  THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE DEBTOR'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS IS CORRECT.  THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CREDITOR AND STOCKHOLDER IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF THE DEBTOR AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN OR SECURITIES OF, THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN.

**EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.**

Pursuant to the Bankruptcy Code, the Debtor filed a plan of reorganization with the Bankruptcy Court on July 18, 2011 and this Disclosure Statement was filed thereafter. The Bankruptcy Court will schedule a hearing to consider approval of this Disclosure Statement and on the confirmation of the Plan (the "Confirmation Hearing") to be held at the United States Bankruptcy Court for the Southern District of Florida, 299 East Broward Boulevard, Room 301, Fort Lauderdale, Florida 33301. At the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Shraiberg, Ferrara & Landau, P.A., 2385 NW Executive Center Drive, Ste. 300, Boca Raton, FL 33431, Phone: (561) 443-0800, Facsimile: (561) 998-0047.

**A.       Overview of the Plan**

**THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN SECTION IV OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use Chapter 11 as a means to conduct Asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to Creditors and stockholders with respect to their Claims against and Equity Interests in a Debtor's bankruptcy Estate.

The Plan divides the Claims against and Equity Interests in the Debtor into Classes. Certain Claims, in particular, Administrative Claims, remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Plan assigns all other Claims and Interests as described below and as defined in the Plan.

| Class | Description | Status | Voting Status |
|-------|-------------|--------|---------------|
| Class 1 | Allowed Secured Claim(s) of Broward County Revenue Collector | Impaired. | Yes. |
| Class 2 | Allowed Secured Claim(s) of RADC/CADC | Impaired. | Yes. |
| Class 3 | Allowed Secured Claim(s) of BB&T | Impaired. | Yes. |
| Class 4 | Allowed Secured Claim(s) of Northern Trust | Impaired. | Yes. |
| Class 5 | Allowed Secured Claim(s) of the Mechanic Lienholders | Impaired. | Yes. |
| Class 6 | Allowed General Unsecured Claims | Impaired. | Yes. |
| Class 7 | Allowed Equity Interests | Impaired. | No.  Deemed rejected. |

**B.      Voting Instructions**

The Bankruptcy Code entitles only holders of Impaired Claims or Equity Interests who receive some distribution under a proposed plan to vote to accept or reject that plan.  Claims in Classes 1, 2, 3, 4, 5, 6 and 7 are Impaired under this Plan.  Holders of Claims or Equity Interests that are Unimpaired under a proposed plan are conclusively presumed to have accepted that Plan and are not entitled to vote on it.  Holders of Classes of Claims or Equity Interests that will receive no Distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, also not entitled to vote on it.

The holders of Claims in Class 7 are deemed rejected, and therefore, there is no need for the Debtor to solicit votes under the Plan for Class 7 Claimholders.

Any Ballot not filed in accordance with the filing instructions on the Ballot pertaining to this Plan shall not be counted for voting purposes.

## II.      BACKGROUND OF DEBTOR

**A.      Commencement of the Chapter 11 Case**

Joseph Kodsi owns fifty percent (50%) of the Debtor and Isaac Kodsi owns fifty (50%) of the Debtor.  Joseph Kodsi and Isaac Kodsi are Insiders of the Debtor and have never received a salary from the Debtor.  Pursuant to the Debtor's Plan, the Debtor is not proposing to pay Joseph Kodsi or Isaac Kodsi a salary.  As identified in the Debtor's Schedules, as of the Petition Date, the Debtor owed Joseph Kodsi $200,000.00.  A list of all known amounts owed to Insiders is identified in the Claims Analysis, attached hereto as Exhibit "C."

The Debtor is a limited liability company that owns three luxury homes that are located at 1431 North Atlantic Boulevard, Fort Lauderdale, Florida (the "1431 Property"); 1427 North Atlantic Boulevard, Fort Lauderdale, Florida (the "1427 Property"); and 1423 North Atlantic

Boulevard, Fort Lauderdale, Florida (the "1423 Property"). As of the Petition Date, all three properties were in the final stages of the construction process. Subsequent to the Petition Date, the Debtor has completed construction of the 1427 Property and a certificate of occupancy for the residence has been issued by the City of Fort Lauderdale.

The Debtor estimates that the value of each property is approximately $4,000,000.00. Currently, the Debtor's sole source of income is generated from the rental income from the 1423 Property. The Debtor utilizes the rental income from the 1423 Property to pay the expenses associated with maintaining the 1423 Property.

The Debtor has been adversely affected by the general economic downturn affecting all businesses and filed this case in order to restructure its debts.

**B.    Retained Professional**

The Court authorized the Debtor to retain general bankruptcy counsel in connection with the Chapter 11 Case. Specifically, the Debtor retained, and the Court approved the retention of Shraiberg, Ferrara & Landau, P.A. ("SFL"), as general bankruptcy counsel. *See* D.E. 50.

**C.    The Claims Process**

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The Bankruptcy Court establishes a "Bar Date" – a date by which Creditors must file their Claims, or else such Creditors will not participate in the Bankruptcy Case or receive any Distribution. After the filing of all Claims, the Debtor evaluates such Claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

As of the date of this Disclosure Statement, the deadline for filing proofs of Claims or Equity Interests against the Debtor is August 17, 2011.

The Debtor has been reviewing, analyzing and resolving Claims on an ongoing basis as part of the claims reconciliation process. To date, six (6) proofs of claim have been asserted in the Chapter 11 Case. A list of the proofs of claims filed as of the date of the filing of this Disclosure Statement is comprised within the Claims Analysis, attached hereto as **Exhibit "C."** Nonetheless, additional claims may be asserted against the Debtor or the creditors may amend their proofs of claims prior to the confirmation of the Debtor's Plan and the actual ultimate aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of Debtor's estimates. Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

**D.    Significant Events that have Occurred During this Case**

Since the Petition Date, the Debtor has generally been making all required post-petition payments, effectively managing its business operations and has been authorized to use cash

collateral. The Debtor is in the process of retaining an appraiser to determine the value of the 1423 Property, the 1427 Property and the 1431 Property.

## III.    CHAPTER 11 PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF CERTAIN OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.    THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN.  CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN.    SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS.**

**A.    Unclassified Claims – Allowed Administrative Claims**

**1.    Ordinary Course Claims.**

Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid in full and performed by the Reorganized Debtor in the ordinary course of business consistent with past practices and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

**2.    Professional Fees and Expense Claims.**

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "**Professional Fees and Expenses Claims**").  All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses.  The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 of the Code and Rule 2016 by the date that is fourteen (14) days after the Effective Date or such other date as may be fixed by the Court.

The time for filing objections to applications for allowance and payment of Professional Fees and Expenses, and the date and time for a hearing in respect of such applications and the related objections, if any, shall be set forth in the Confirmation Order or other order of the Court.

Notwithstanding anything herein to the contrary, all Professional Fees and Expenses that are awarded by the Court shall become Allowed Administrative Claims and shall be paid in full in Cash on the later of the Effective Date of the Plan, the date on which such Professional Fees and Expense Claim becomes an Allowed Administrative Claim by Final Order of the Court or as soon thereafter as is reasonably practicable.

### 3.    Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim shall receive deferred cash payments over a period not to exceed five years following the Order for Relief, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Priority Tax Claim, except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment. Prior to the Effective Date, the Debtor shall have the right, in its sole discretion, to prepay at any time, in whole or in part, the Allowed Priority Tax Claim without premium or penalty of any sort or nature.

### 4.    United States Trustee Fees.

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for each quarter, until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursements for each quarter.

## B.    Treatment of Claims and Interests

### 1.    Class 1.  Allowed Secured Claim(s) of Broward County Revenue Collector

(a)    Description. Class 1 consists of the Allowed Secured Claim(s), which total approximately $46,321.23 for unpaid 2010 real property taxes.

(b)    Treatment. Except to the extent that the holder of the Allowed Secured Claims of Broward County Revenue Collector have been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Claim(s) of Broward County Revenue Collector shall be paid 100% of the Allowed amount of the Claim. Class 1 Claimholders shall receive equal monthly payments, of principal and interest, commencing on the Effective Date, with interest at 5% per annum, or such other rate as may be approved by the Court in the Confirmation Order, over a period not to exceed five (5) years. Any payment of taxes prior to the Effective Date shall be applied to reduce the amount of the monthly payments. In the event the Broward County Revenue Collector will not accept monthly payments, the Debtor shall escrow the aforementioned monthly payments and tender a lump sum payment every twelve (12) months.

(c) <u>Impairment</u>.  The Class 1 Claim is Impaired and Class 1 Claimholders are entitled to vote to accept or reject the Plan.

**2.      Class 2.  Allowed Secured Claim(s) of RADC/CADC.**

(a)      <u>Description.</u>  Class 2 consists of the Allowed Secured Claim(s) held by RADC/CADC in the amount of approximately $3,150,000.00 and is the holder of the first position mortgage on the 1423 Property, which is being serviced by Midland.

(b)      <u>Treatment</u>.  Except to the extent that the holder of the Allowed Secured Claim(s) of RADC/CADC have been paid prior to the Effective Date or agrees to a different treatment, RADC/CADC shall be paid the full amount of its Claim in full satisfaction, settlement, release and discharge of RADC/CADC's Claims in this Case as follows:

i.  For the duration of a sixty (60) month period commencing on the Effective Date, RADC/CADC shall be paid monthly interest only payments on the twentieth (20th) of each month at a rate of one (1) percentage point over the prime rate[1] calculated off of a $3,150,000.00 indebtedness (i.e., monthly payment of $11,156.25);

ii.  RADC/CADC shall receive a balloon payment of $3,150,000.00 on the sixtieth (60th) month anniversary of the Effective Date, or the Debtor will abandon the property to the lender and/or consent to the entry of a foreclosure judgment in favor of the lender.

The Debtor shall have a grace period of ten (10) calendar days after the date of any payment of interest or principal due as described herein.  The Debtor may prepay without penalty.

(c) <u>Impairment</u>.  The Class 2 Claim is Impaired and the Class 2 Claimholders are entitled to vote to accept or reject the Plan.

**3.      Class 3.  Allowed Secured Claim(s) of BB&T**

(a)      <u>Description</u>. Class 3 consists of the Allowed Secured Claim(s) held by BB&T in the amount of $3,300,000.00[2] and is the holder of the first position mortgage on the 1427 Property.

(b)      <u>Treatment</u>.  Except to the extent that the holder of the Allowed Secured Claim(s) of BB&T have been paid prior to the Effective Date or agrees to a different treatment, BB&T shall be paid the full amount of its Claim in full satisfaction, settlement, release and discharge of BB&T's Claims in this Case as follows:

---

[1]      The prime rate, as reported by the Wall Street Journal, is currently 3.25.

[2]      BB&T had filed a Proof of Claim in the amount of $3,478,006.81.  The Debtor anticipates filing a Motion to Value BB&T's Collateral based upon BB&T's appraised value of $3,300,000.00.

i.  For the duration of a twenty-four (24) month period commencing on the Effective Date, BB&T shall be paid monthly interest only payments on the twentieth (20th) of each month at a rate of one (1) percentage point over the prime rate calculated off of a $3,300,000.00 indebtedness (i.e., monthly payment of $11,687.50);

ii.  Subsequent to, and upon completion of the twenty-four (24) monthly interest payments provided herein above, BB&T shall be paid principal and interest monthly payments for the following thirty-six (36) months, amortized over twenty-five (25) years at a rate of one (1) percentage point over prime, calculated off of a $3,300,000.00 indebtedness (i.e, monthly payment of $17,877.36);

iii.  BB&T shall receive a balloon payment of approximately $2,887,009.40 on the sixtieth (60th) month anniversary of the Effective Date, or the Debtor will abandon the property to the lender and/or consent to the entry of a foreclosure judgment in favor of the lender.

(c)      Impairment.  The Class 3 Claim is Impaired and the Class 3 Claimholders are not entitled to vote to accept or reject the Plan.

### 4.      Class 4. Allowed Secured Claim(s) of Northern Trust

(a)      Description.  Class 4 consists of the Allowed Secured Claim(s) held by Northern Trust in the amount of approximately $3,018,346.90, plus a per diem of $594.29 thereafter, plus reasonable costs and attorneys' fees.  The valid and perfected security interests and secured claims held by Northern Trust are secured by the 1431 Property and evidenced by the following: (a) Construction Loan Agreement dated June 15, 2007; (b) Note dated June 15, 2007; (c) Mortgage and Security Agreement dated June 15, 2007, recorded June 29, 2007, in Official Records Book 44262, at Page 1970, of the Public Records of Broward County, Florida; (d) Loan Modification Agreement dated May 11, 2010; (e) Second Loan Modification Agreement dated October 26, 2010; and (f) Third Loan Modification Agreement dated March 30, 2011 (collectively, the "Northern Loan Documents").

(b)      Treatment.  Northern Trust has agreed to vote in favor of the Plan filed by the Debtor so long as the treatment of Northern Trust's Secured Claim is consistent with terms of the agreement between the Debtor and Northern Trust which are memorialized in the terms of the Proposed Final Order Granting Joint Emergency Motion for Order Approving Stipulation, Granting Adequate Protection, Relief from Stay, Abstention and Dismissal of Case (the "Proposed Order Approving Stipulation").  A true and correct copy of the Proposed Order Approving Stipulation will be attached to the Disclosure Statement as Exhibit "B" and the Debtor shall seek this Court's approval thereof.  For summary purposes only, the terms in the Plan as it relates to Northern Trust's Secured Claim and the terms herein incorporate the terms of the Proposed Order Approving Stipulation.  To the extent the terms in the Plan or in the Disclosure Statement are inconsistent with the terms of the Proposed Order Approving Stipulation, the terms of the Proposed Order Approving Stipulation shall control.

The Debtor shall remain in possession and control of the 1431 Property for six (6) months from the date of the Proposed Order Approving Stipulation.  The Debtor and Northern

Trust shall comply further with the terms and obligations of the Northern Loan Documents except to the extent varied by the Proposed Order Approving Stipulation, the Plan and Disclosure Statement.  The Debtor shall use its best efforts to effectuate a sale of the 1431 Property prior to the expiration of six (6) months from the date of the Proposed Order Approving Stipulation for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than all amounts owed to Northern Trust by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and Northern Trust) and provided that the net sale proceeds up to the amount of, but not more than, Northern Trust's Secured Claim shall be paid to Northern Trust at the closing of the sale of the 1431 Property. Except for sales rendered in the ordinary course of its business, and except as otherwise ordered by this Court, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of the 1431 Property without the prior written consent of Northern Trust, which shall not be unreasonably withheld, and no such consent shall ever be implied from any other action, inaction or acquiescence by Northern Trust, unless such sale, transfer, lease, encumbrance of other disposition is approved by this Court.  In the event the Debtor obtains an offer to purchase the 1431 Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than an amount equal to all amounts owed to Northern Trust by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and Northern Trust) and provided that the net sale proceeds shall be paid to Northern Trust at the closing of the sale of the sale of the 1431 Property, Northern Trust shall agree to such sale in full satisfaction of its Claims.

With respect to the 1431 Property, other than routine expenses for the preservation and maintenance of the 1431 Property, the Debtor may not, without prior written consent of Northern Trust make any prepayments with respect to services which have not been rendered, goods which have not been received, or any other items of expenses for which payment is not currently due.  Upon reasonable notice, Northern Trust shall be entitled to inspect the books, records and accounts of the Debtor at  the office of the Debtor; and the Debtor shall timely filed its Debtor-in-possession reports.  The Debtor shall, whenever Northern Trust determines that it is necessary, make the 1431 Property available for inspection by Northern Trust upon five (5) days' notice from Northern Trust of its desire to inspect said 1431 Property.

Until such time as the 1431 Property is sold under the terms and conditions described in the Proposed Order Approving Stipulation, the Debtor shall make adequate protection payments to Northern Trust on a monthly basis in the amount of $15,931.95 each, commencing on August 1, 2011, and a like amount on the first day of each month thereafter until the sale of the 1431 Property under the terms and conditions described in the Proposed Order Approving Stipulation, or a default by the Debtor thereunder, whichever shall first occur, each of which payments shall be first applied to interest on the outstanding amount of the Claim of Northern Trust in the amount of $3,018,346.90 at the rate of four percent (4%) per annum and the balance in reduction of the Claim of Northern Trust.  However, nothing contained in the Plan, the Disclosure Statement or the Proposed Order Approving Stipulation shall be deemed to reduce or eliminate any Claim by Northern Trust for interest on its Secured Claim, attorneys' fees and/or costs.  The interest rate of four percent (4%) per annum shall not affect Northern Trust's right to seek interest on the outstanding amount of its Claims at the applicable non-default rate or rates otherwise set forth in the Northern Loan Documents provided that there have not been any defaults under the Plan, the Disclosure Statement, Proposed Order Approving Stipulation or

under the Northern Loan Documents arising after the date of the stipulation between the Debtor and Northern Trust.

It will be an event of default if the Debtor fails in any way whatsoever to comply fully with the obligations set forth in the Plan, the Disclosure Statement and the Proposed Order Approving Stipulation as it relates to the Claims of Northern Trust, or if the Debtor fails in any way whatsoever to comply further with any non-monetary terms and obligations of the original Northern Trust Loan Documents; or if the Debtor fails to effectuate a sale of the 1431 Property for all cash with net sale proceeds, after all expenses are deducted, of not less than all amounts owed to Northern Trust by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and Northern Trust) and to pay Northern Trust immediately at the closing all amounts owed to Northern Trust no later than six (6) months from the date of the Proposed Order Approving Stipulation. Regardless of whether the Debtor or its counsel receives any notice of default, upon the occurrence or any such event of default, the Debtor will be in breach hereof and Northern Trust may notify the Debtor and Debtor's undersigned counsel of the default by e-mail. If the default is not cured within five (5) business days of the date of the notice, then the Debtor will: (a) consent to and join any motion by Northern Trust to require the 1431 Property to be sold pursuant to 11 U.S.C. § 363, with Northern Trust being allowed to credit bid up to the aggregate amount of the indebtedness of the Debtor to Northern Trust at any such sale; and (b) stipulate that Northern Trust has, or should have, a valid and perfected first priority Secured Claim on the proceeds of any sale of the 1431 Property under 11 U.S.C. § 363 in the full amount of the indebtedness of the Debtor to Northern Trust, which should be paid over promptly to Northern Trust after confirmation of the sale under 11 U.S.C. § 363.

Additionally, in the event of any such default, Northern Trust may notify the Debtor's undersigned counsel of the default by e-mail. If the default is not cured within five (5) business days of the date of the notice, then Northern Trust will be entitled, without further notice or hearing, based only upon an affidavit of default by an authorized officer of Northern Trust, to entry of an Order by the Bankruptcy Court which: (i) grants Northern Trust full and complete relief from any stay, including but not limited to the stay otherwise applicable or sought under Bankruptcy Code sections 105 and 362, to foreclose on and cause the 1431 Property to be sold pursuant to a Court Order, and to take any other actions necessary or appropriate under the Northern Loan Documents or applicable law to collect its claims against the Debtor and/or the 1431 Property; (ii) directs the Debtor to abandon the 1431 Property peacefully to Northern Trust within five (5) days of the entry of the Order; and (iii) immediately dismisses the present case as to the 1431 Property.

If the Debtor (i) is otherwise in full compliance with the terms of the Proposed Order Approving Stipulation; (ii) timely files its Disclosure Statement, and a valid contract for the sale of the 1431 Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than the aggregate amount of Northern Trust's secured claims hereunder (the "1431 Sale Contract"); and (iii) obtains a letter from Northern Trust that the provisions of the Disclosure Statement, the Plan, and Sale Contract are acceptable to Northern Trust and that Northern Trust is in agreement with the entry of an Order which continues the effect of the automatic stay, then the Debtor may submit to the Court of said consent letter from Northern Trust, together with a proposed Agreed Order Extending Effect of Automatic Stay and Allowed

Use of Collateral beyond the six (6) month provided in the Plan, the Disclosure Statement and the Proposed Order Approving Stipulation, and Postponing Effective Date of Abstention and Dismissal.

(c)      Impairment.  The Class 4 Claim is Impaired and the Class 4 Claimholder is entitled to vote to accept or reject the Plan.

### 5.      Class 5.  Allowed Secured Claim(s) of Mechanic Lienholders

(a)      Description. Class 5 consists of the Allowed Secured Claim(s) of Mechanic Lienholders.   The Debtor estimates that the Mechanic Lienholders are owed approximately $230,093.61 in the aggregate.

(b)      Treatment.  Except to the extent that the holders of Allowed Secured Claim(s) of Mechanic Lienholders have been paid prior to the Effective Date or agrees to a different treatment, the holders of Allowed Secured Claim(s) of Mechanic Lienholders shall receive a *pro rata* Distribution of $25,000.00, excluding interest, paid in quarterly payments over a period of three (3) years, commencing ninety (90) days of the Effective Date and will receive interest on the amount of their Distribution at 2.5%.  The *pro rata* Distribution to the Claimholders of Allowed Secured Claim(s) of Mechanic Lienholders shall be in full satisfaction, settlement, release and discharge of all such Class 5 Claimholders' respective Allowed Claim.

(c)      Impairment.  The Class 5 Claim is Impaired and the Class 5 Claimholder is entitled to vote to accept or reject the Plan.

### 6.      Class 6.  Allowed General Unsecured Claims

(a)      Description. Class 6 consists of the Allowed General Unsecured Claims.   A Claims Analysis is attached to the Disclosure Statement as Exhibit C.

(b)      Treatment.  Except to the extent that the holders of Allowed General Unsecured Claims have been paid prior to the Effective Date or agree to a different treatment, the holders of Allowed General Unsecured Claims shall receive a *pro rata* Distribution of $25,000.00, excluding interest, paid in quarterly payments over a period of three (3) years, commencing ninety (90) days of the Effective Date and will receive interest on the amount of their Distribution at 2.5%.  The *pro rata* Distributions to the Claimholders of Allowed General Unsecured Claim(s) shall be in full satisfaction, settlement, release and discharge of all such Class 5 Claimholders' respective Allowed Claim.

(c)      Impairment.  The Class 6 Claims are Impaired and the Class 6 Claimholders are entitled to vote to accept or reject the Plan.

### 7.      Class 7.  Allowed Equity Interests.

(a)      Description.  Class 7 consists of the Allowed Equity Interests, which includes interest in any share of preferred stock, common stock or other instrument evidencing ownership

interest in the Debtor, whether or not transferable, and any option, warranty, right, contractual or otherwise, to acquire any such interest.

(b)    Treatment.  Other than retaining their Equity Interests in the Debtor, the holders of Allowed Equity Interests shall not be entitled to receive any Distribution under the Plan on account of such Equity Interests.  In exchange for agreeing to waive the amounts owed to Joseph Kodsi and for financing the payments under the Plan, Joseph Kodsi shall continue to own 50% of the Reorganized Debtor and Isaac Kodsi shall continue to own 50% of the Reorganized Debtor.

(c)    Impairment.  The Class 7 Claims are Impaired, but Class 7 Claimholders are not entitled to vote to accept or reject the Plan, as Class 7 Claimholders shall be deemed to have rejected the Plan.

## C.    Distributions Under the Plan

Subject to Rule 9010, and except as otherwise provided in Section 5.03 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim or Allowed Equity Interest at the address of such holder as listed on the Schedules and/or proof of claim as of the Distribution Record Date unless the Debtor or Reorganized Debtor have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Reorganized Debtor to any holder of a Claim unless a request therefore is made in writing to the Reorganized Debtor, or unless the Distribution is a final Distribution.

When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows:  fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided herein.

Any Distributions of Cash or other property under the Plan that is unclaimed for a period of six (6) months after the Distribution Date shall constitute unclaimed funds and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

Unless otherwise provided herein, all initial Distributions and deliveries to be made on the Effective Date shall be made on the initial Distribution Date.  Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

At the close of business on the Distribution Record Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the Distribution Record Date; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Distribution Record Date and prior to the Effective Date. The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Distribution Record Date.

Any and all objections to any claim must by filed within thirty (30) days after the Effective Date (the "Objection Deadline"), or as otherwise ordered by the Court. In the event that the Debtor settles any claim objection, the Debtor may seek approval by submitting an agreed order in a form acceptable to the Debtor and the holder of the Disputed Claim. In the event that the Debtor and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtor will set the contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set. The Debtor shall delay the ultimate distribution to Allowed General Unsecured Claims until such time as final determination is made on all Disputed Claims.

If any Distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such Distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such Distribution was made shall be canceled and said claimant shall not be entitled to any further Distributions hereunder. A Distribution of funds is unclaimed, if, without limitation, the holder of a Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules, the Amended Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable. Any funds unclaimed for the period described in paragraph above shall become property of the Reorganized Debtor.

**D.      Executory Contracts and Unexpired Leases**

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all Executory Contracts and unexpired leases between the Debtor and any Person shall be deemed <u>rejected</u> by the Reorganized Debtor as of the Effective Date, <u>except</u> for any Executory Contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such Executory Contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the deadline to submit Ballots; *provided, however*, that the Debtor or Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any Executory Contract or unexpired lease therefrom or add any Executory Contract or unexpired lease thereto, in which

event such Executory Contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected. The Debtor or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the Executory Contracts and unexpired leases affected thereby. The listing of a document on the Assumption List shall not constitute an admission by the Debtor or Reorganized Debtor that such document is an Executory Contract or an unexpired lease or that the Debtor or Reorganized Debtor have any liability thereunder.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the Executory Contracts and unexpired leases assumed pursuant to Article VI of the Plan and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the Executory Contracts and unexpired leases rejected pursuant to the Plan.

## a.    Cure of Defaults

To the extent that cure payments are due with respect to an Executory Contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Plan Supplement. To the extent that the non-debtor party to any Executory Contract or unexpired lease disagrees with the cure amount listed in the Plan Supplement, such party must file a notice of dispute with the Court and serve such notice on the Debtor by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any Executory Contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtor, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

## b.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an Executory Contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtor or Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order and (iii) notice of an amendment to the Assumption List. Any Claim not filed within such time will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor and its property. Unless otherwise ordered by the Court, all Claims arising from the rejection of Executory Contracts and unexpired leases shall be treated as Unsecured Claims under the Plan.

### c.        Indemnification Obligations

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.

### d.        Compensation and Benefit Programs

Except as provided in the Plan, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtor applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, on or after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as Executory Contracts under the Plan and are hereby assumed pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtor reserves the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

### e.        Insurance Policies

Each of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as Executory Contracts under the Plan. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtor may hold against any entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

## E.        Modification/Revocation of the Plan

Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify the Plan before its Substantial Consummation. The Debtor further reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur or if the Plan does not become effective, then the Plan will be null and void, and nothing contained in the Plan will: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; (b) constitute an admission of any fact or legal conclusion by the Debtor or any other Entity; or (c) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

**F.      Effect of Confirmation**

The Plan will be binding upon and inure to the benefit of Debtor, holders of Claims and Interests in Debtor, and their respective successors and assigns.

**G.      Discharge, Exculpation, Injunction, Release and Limitation of Liability**

   **1.      Discharge of Debtor**

The rights afforded herein, within the Plan, and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, the Estate, or any of the assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against and Equity Interest in the Debtor shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, their successors, or their assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.  Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

   **2.      Injunction Related to Discharge**

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtor, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.*

   **3.      Release by Holders of Impaired Claims**

*The Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and Causes of Action, whether known or unknown,*

*that holders of Claims against and Equity Interests in the Debtor may have against the Debtor. In consideration of the obligations of the Debtor, the Reorganized Debtor, under the Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with the Plan, each holder of a Claim against or Equity Interest in the Debtor shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's obligations under the Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 case or the conduct thereof, or the Plan.   Notwithstanding the foregoing, nothing in Article 7.15 of the Plan, other provisions of the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct.*

### 4.    Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

## H.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible, including jurisdiction to:

(a)    to hear and determine pending applications for the assumption or rejection of Executory Contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)    to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)    to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)    to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)    to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)    to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)    to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)    to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)    to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)    to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)    to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(p)    to hear any other matter not inconsistent with the Code; and

(q)    to enter a Final Decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## I.    Objections to Claims

Subject to applicable law, from and after the Effective Date, the Debtor will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan.  Any and all objections to any claim must by filed prior to the Objection Deadline, or as otherwise ordered by the Court.

An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtor, at any time on or before the deadline to object to Claims. The failure by Debtor to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtor' right to object to, or re-examine, any such Claim in whole or in part.

## IV.   CONFIRMATION OF THE PLAN AND VOIDABLE TRANSFERS

### A.   Confirmation Hearing

The Bankruptcy Court shall schedule the Confirmation Hearing to consider approval of this Disclosure Statement and confirmation of the Plan before the Honorable John K. Olson, Judge for the United States Bankruptcy Court for the Southern District of Florida, located at the United States Bankruptcy Court, 299 East Broward Boulevard, Room 301, Fort Lauderdale, Florida 33301. The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing. The Bankruptcy Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

### B.   Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that with respect to each class of claims or interests, such class has accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims or interests which is impaired under the plan. The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met. The Debtor believes that the Plan satisfies all of the requirements for confirmation.

### C.   Voidable Transfers

The Debtor has reviewed all transfers in the aggregate of $5,850.00 or more to a particular transferee made during the ninety (90) days prior to the filing and all transfers made to related entities and/or individuals within the one (1) year preceding the filing. Said transfers are stated in the Debtor's Amended Statement of Financial Affairs [D.E. 55] and are attached hereto as **Exhibit "D."** The majority of these transfers were made with the Debtor acting as a mere conduit between Northern Trust and Isaac Kodsi for a non-debtor property. While the Debtor believes all of the transfers listed on Exhibit D were made in the ordinary course, the Debtor is in the process of investigating same transfers.

## V.   FUNDING AND FEASIBILITY OF THE PLAN

### A.   Funding of the Plan & Feasibility

Funds to be used to make cash payments under the Plan shall derive from the rental income from the Properties and from the Debtor's Insiders, Joseph Kodsi, Isaac Kodsi, and other

affiliated entities owned by them.  Based on the foregoing, the Debtor asserts that it is able to perform all of its obligations under the Plan, and as such, the Plan satisfies 11 U.S.C. § 1129(a)(11).  In order to assist in funding the Debtor's business operations under the Plan, the Debtor may retain its cash on hand, the funds in its bank accounts, and may retain amounts received from accounts receivable to pay accounts payable.

**B.    Best Interests Test and Liquidation Analysis**

Notwithstanding acceptance of the Plan by each Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such Class member would receive if Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.  In the event this case is converted to Chapter 7, each respective secured creditor will obtain stay relief to proceed against their respective Property and there would be deminimus assets available to make a distribution to holders of Allowed General Unsecured Claims.  In the instant case, the Debtor is proposing a $25,000.00 distribution to allowed claims of Mechanic Lienholders and a $25,000.00 distribution to holders of Allowed General Unsecured Claims, which exceeds the dollar amount that would be generated from the Debtor's assets if the Debtor were liquidated by a trustee in bankruptcy.

## VI.    <u>ALTERNATIVES TO THE PLAN</u>

Although this Disclosure Statement is intended to provide information to assist a Claim or Equity Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

*[Remainder of Page Intentionally Left Blank]*

If the Plan is not confirmed with respect to the Debtor, the following alternatives are available: (i) confirmation of another chapter 11 plan; (ii) conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 Case leaving creditors and interest holders to pursue available non-bankruptcy remedies. The alternatives to the Plan are very limited and not likely to maximize the value of the assets of this estate. The Debtor believes that conversion of the Chapter 11 Case to a chapter 7 case would result in (i) significant delays in distributions to creditors who would have received a Distribution under the Plan; and (ii) potentially less recovery for unsecured creditors due to an increase in Chapter 7 and Chapter 11 administrative expenses. If the Chapter 11 Case is dismissed, the Creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against the Debtor. Although the Debtor could theoretically file a new plan, the Debtor believes that confirmation of the Plan is preferable to all other alternatives.

Respectfully Submitted,

**ARK DEVELOPMENT/OCEANVIEW, LLC**

By: _____
           Isaac Kodsi, Managing Member

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent to those parties as listed on the Court's Case Management / Electronic Case Filing, this 18th day of July, 2011.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: plandau@sfl-pa.com

By:    /s/ Philip J. Landau
        Philip J. Landau
        Florida Bar. No. 0504017
        Lenore M. Rosetto
        Florida Bar No. 064448
        lrosetto@sfl-pa.com

**EXHIBIT A**

**Plan of Reorganization**


*See* **Plan of Reorganization filed by the Debtor as docket entry [62] on July 18, 2011.**

# Exhibit
# B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| ARK DEVELOPMENT/OCEANVIEW, LLC, | Case No. 11-20382-JKO |
| Debtor. | |

**FINAL ORDER GRANTING JOINT EMERGENCY MOTION**
**FOR ORDER APPROVING STIPULATION, GRANTING ADEQUATE PROTECTION,**
**RELIEF FROM STAY, ABSTENTION AND DISMISSAL OF CASE**

THIS CAUSE having come before the Court upon the annexed Stipulation and *Joint*

*Emergency Motion For Order Approving Stipulation between the Debtor/Debtor-in-possession,*

*ARK DEVELOPMENT/OCEANVIEW,    LLC    (the    "Debtor")    and    the    Creditor,*

*NORTHERN TRUST N.A. ("NORTHERN"), Granting Adequate Protection and Relief From*

*Stay* and the Court having reviewed the file, considered said Stipulation and Joint Emergency

{1548/000/00081568}1

Motion, considered the arguments and representations of counsel, being otherwise fully advised in the premises, and believing that good cause exists,

THE COURT HEREBY FINDS:

A.      On April 18, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued as a debtor-in-possession.

B.      NORTHERN holds valid and perfected security interests and secured claims; said claims are evidenced and secured by that certain: (a) Construction Loan Agreement dated June 15, 2007; (b) Note dated June 15, 2007; (c) Mortgage and Security Agreement dated June 15, 2007, recorded June 29, 2007, in Official Records Book 44262, at Page 1970, of the Public Records of Broward County, Florida; (d) Loan Modification Agreement dated May 11, 2010; (e) Second Loan Modification Agreement dated October 26, 2010; and (f) Third Loan Modification Agreement dated March 30, 2011. Copies of all of said documents (collectively the "Loan Documents") are attached as composite **Exhibit "A"** hereto.

C.      Section 12 of the aforesaid Third Loan Modification Agreement dated March 30, 2011, to which the Debtor was a party pre-petition, expressly provided as follows:

> 12.      <u>Bankruptcy</u>.     In entering into this Agreement, Borrower, Guarantor and Lender hereby stipulate, acknowledge and agree that Lender gave up valuable rights and agreed to abstain from exercising certain legal remedies available to it in exchange for the promises, representations, acknowledgements and warranties of Borrower and Guarantor as contained herein, including without limitation, that the Borrower and Guarantor have already paid, by and through this Agreement, an ample opportunity to reorganize and/or restructure their debt. In fact, the present Agreement was requested by the Borrower and Guarantor and, thereafter, agreed to by the Lender based upon the very specific promise, representation, acknowledgement and warranty of Borrower and Guarantor that this Agreement and the terms and conditions contained therein would give the Borrower and Guarantor more than sufficient and ample opportunity to reorganize and/or

restructure their debt so that if the Borrower and/or Guarantor subsequently filed a petition for relief under the Bankruptcy Code it should be dismissed as a "Bad Faith" filing in that the Borrower and Guarantor have already bargained for and received sufficient opportunity to reorganize and/or restructure their debt; and that Lender would not have entered into this Agreement but for such promises, representations, acknowledgements, agreements, and warranties, all of which have been accepted by Lender in good faith, the breach of which by Borrower or Guarantor in any way, at any time, now or in the future, would admittedly and confessedly constitute cause for dismissal of any such bankruptcy petition pursuant to 11 U.S.C. §1112(b).

As additional consideration for Lender agreeing to abstain from immediately enforcing its rights and remedies under the Loans, Notes, Mortgage, Guaranties, and the other Loan Documents, including the First Loan Modification Agreement and Second Loan Modification Agreement, including but not limited to the initiation of foreclosure proceedings, Borrower and Guarantor agree that in the event a bankruptcy petition under any Chapter of the Bankruptcy Code (11 U.S.C. §101, *et seq.*) is filed by or against Borrower and Guarantor at any time after the execution of this Agreement, Lender shall be entitled to the immediate entry of any order from the appropriate bankruptcy court granting Lender complete relief from the automatic stay imposed by §362 of the Bankruptcy Code (11 U.S.C. §362) to exercise its foreclosure and other rights, including but not limited to obtaining a foreclosure judgment and foreclosure sale, upon the filing with the appropriate court of a motion for relief from the automatic stay with a copy of this Agreement attached thereto. Borrower and Guarantor specifically agree (i) that upon filing a motion for relief from the automatic stay, Lender shall be entitled to relief from the stay without the necessity of an evidentiary hearing and without the necessity or requirement of the Lender to establish or prove the value of the property securing the obligations under the Loans, Notes, Mortgage, Guaranties, and the other Loan Documents, including the First Loan Modification Agreement and Second Loan Modification Agreement, (the "Property"), the lack of adequate protection of its interest in the Property, or the lack of equity in the Property; (ii) that the lifting of the automatic stay hereunder by the appropriate bankruptcy court shall be deemed to be "for cause" pursuant to §362(d)(l) of the Bankruptcy Code (11 U.S.C. §362(d)(l); and (iii) that Borrower and Guarantor will not directly or indirectly oppose or otherwise defend against Lender's efforts to gain relief from the automatic stay. This provision is not intended to preclude Borrower and Guarantor from filing for protection under any Chapter of the Bankruptcy Code. The remedies prescribed in this paragraph are not exclusive and shall not limit Lender's rights under the Loans, Notes, Mortgage, Guaranties, and the other Loan

Documents, including the First Loan Modification Agreement and Second Loan Modification Agreement, this Agreement or under any law.

All of the above terms and conditions have been freely bargained for and are all supported by reasonable, adequate and sufficient consideration and the provisions herein are material inducements for Lender entering in this Agreement.

D.      As of April 22, 2011, the claim of NORTHERN was in the amount of $3,018,346.90 plus a per diem of $594.29 thereafter, plus reasonable costs and attorneys' fees; said claim is fully secured under Bankruptcy Code § 506 by a good, valid and duly perfected security interest in certain property (the "Property") the legal description of the real property portion of which is the following:

All that portion of Lot 5, Block 8, LAS OLAS BY THE SEA EXTENSION, according to the Plat thereof, recorded in Plat Book 3, at Page 8, of the Public Records of Broward County, Florida, lying west of the west right of way line of State Road A-1-A as shown on right-of-way map of same Sheet #4 and recorded in Right-of-Way Map Book 2, Page 48, Broward County, City of Ft. Lauderdale, Florida.

E.      Prior to the Petition Date, the Debtor was in the process of constructing a residence on the Property. After the Petition Date, the Debtor completed construction of said residence on the Property and a certificate of occupancy for the residence has been issued by the City of Fort Lauderdale.

F.      The Debtor has failed to make timely payments and is now in default under the terms of the subject Loan Documents with NORTHERN.

G.      The proceeds from the Property, which include, without limitation, all of the real and personal property described above, together with the rents, issues and profits and insurance proceeds generated thereby, are "cash collateral" (which together with the Property itself shall hereinafter be referred to as the "Collateral").

H.      The Debtor believes that NORTHERN is adequately secured by the Property.

I.      The Debtor continues to remain in possession of and use the Collateral, subjecting it to depreciation and a risk of loss.

J.      NORTHERN asserts that it lacks adequate protection for its interest in the Collateral because the Collateral will continue to depreciate in value over the period of time in which this Stipulation is in effect; the Debtor is unable to make complete adequate protection payments at the pre-judgment rate of 7.14% per annum nor the judgment rate of 6% per annum.

K.      The relief requested in the Joint Emergency Motion and provided herein, is necessary, essential and appropriate for the continued survival and operation of the Debtor's business, absent which the Debtor's ability to maximize the value of its estate will be irreparably jeopardized to the detriment of its creditors.

L.      The Court hereby finds that the Stipulation and this Order have been negotiated and agreed to by the parties in good faith, and that NORTHERN is a good-faith lender herein pursuant to Bankruptcy Code section 364(e).

M.      The Court has core jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

N.      Notice of the hearing on the Joint Emergency Motion has been duly-served upon (i) the United States Trustee for the Southern District of Florida; (ii) counsel for the Lender; (iii) the 20 largest unsecured non-insider creditors of the Debtor's estate; (iv) all creditors known to the Debtor who may have liens or other interests in and against the Debtor's assets; and (v) any party in interest who has filed a notice of appearance and request for service of papers in this Chapter 11 case and served same upon Debtor's counsel. Such

notice constitutes sufficient notice under Bankruptcy Rule 4001(c)(3), and no other notice need be given.

O.    Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the Debtor's business and operations and permit the Debtor to attempt to maximize the value of the Property.

**NOW, THEREFORE,** upon the aforesaid findings and the record of the proceedings heretofore held before this Court with respect to the Joint Emergency Motion,

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1.    The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be necessary to implement the terms and conditions of this Order and the transactions described herein and in the Joint Emergency Motion.

2.    Except for sales rendered in the ordinary course of its business, and except as otherwise provided herein, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of the Property without the prior written consent of NORTHERN, which shall not be unreasonably withheld, and no such consent shall ever be implied from any other action, inaction or acquiescence by NORTHERN, unless such sale, transfer, lease, encumbrance or other disposition is approved by this Court.

3.    The Debtor shall timely serve upon NORTHERN all pleadings and other documents filed in this Chapter 11 case, including monthly financial reports required by the United States Trustee's office, and shall continue to supply to NORTHERN such reports as requested by NORTHERN.

4.    Except as otherwise expressly provided herein, the terms of this Order shall be valid and binding upon the Debtor, all creditors of the Debtor and all other parties in interest *nunc pro tunc* to the Petition Date.

5.    If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other Court, without NORTHERN's and the Debtor's prior written consent, such stay, modification or vacation shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor to NORTHERN that is or was incurred pursuant to this Order before NORTHERN's receipt of notice of the effective date of such stay, modification or vacation.

6.    Nothing contained in this Order shall be deemed a waiver by NORTHERN of any objection(s) it may raise to any claims of insiders, as defined in the Bankruptcy Code.

7.    Provided that the Debtor fully complies with the terms and conditions of this Order, the Debtor shall remain in possession and control of the Property for up to six (6) months from the date hereof pursuant to Bankruptcy Code § 543(d)(l).

8.    The Debtor has no defenses, setoffs or counterclaims ("counterclaims") against NORTHERN, its officers, directors, employees and/or the abovementioned indebtedness; to the extent that such counterclaims do or did exist, they are specifically released and waived by the Debtor on behalf of the estate;  NORTHERN shall not be subject to any claims for administrative expenses and/or surcharges arising under or by virtue of applicable law, including, without limitation, Bankruptcy Code §§ 503 or 506(c).

9.    In addition to the other terms of this Order, the following provisions, requirements and conditions shall also be applicable:

> A. Within thirty (30) days of the date of this Order, the Debtor shall provide NORTHERN with an updated detailed budget and punch list for the

completion of punch-list work and/or cleaning at the Property, which shall be subject to NORTHERN's approval in its sole discretion. In the event NORTHERN approves the budget and punch list, and NORTHERN agrees to fund the completion of the Property (in Northern's sole discretion), the Debtor shall file with the Court a motion to approve this post-petition financing.

B. NORTHERN shall have the right to inspect the Property from time to time using its designated engineer, architect or other construction consultants to ascertain that the budget appears to be adequate to complete the punch-list work and/or cleaning at the Property and Debtor shall grant access to the Property to NORTHERN and its designees upon reasonable advance notice of not more than 5 calendar days.

C. Within ten (10) business days of the date of this Order, the Guarantors under the Loan Documents shall provide NORTHERN with updated personal financial statements and copies of their latest federal income tax returns.

D. The Guarantors under the Loan Documents must execute and deliver to NORTHERN reaffirmations of their personal guarantees in such form as NORTHERN in its sole discretion shall require.

E. The Debtor and NORTHERN shall comply further with the terms and obligations of the original Loan Documents except to the extent varied therefrom by this Order.

F. The Debtor shall use its best efforts to effectuate a sale of the Property prior to the expiration of six (6) months from the date of entry of this Order for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than all amounts owed to NORTHERN by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and NORTHERN) and provided that the net sale proceeds up to the amount of, but not more than, NORTHERN's secured claim shall be paid to NORTHERN at the closing of the sale of the Property.

G. In the event the Debtor obtains an offer to purchase the Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than an amount equal to all amounts owed to NORTHERN by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and NORTHERN) and provided that the net sale proceeds shall be paid to NORTHERN at the closing of the sale of the Property, NORTHERN shall agree to such sale in full satisfaction of its claims.

10.    With respect to the Property, other than routine expenses for the preservation and maintenance of the Property, the Debtor may not, without prior written consent of NORTHERN,

make any prepayments with respect to services which have not been rendered, goods which have not been received, or any other items of expenses for which payment is not currently due.

11.     Upon reasonable notice, NORTHERN shall be entitled to inspect the books, records and accounts of the Debtor at the office of the Debtor; and the Debtor shall timely file its Debtor-in-possession reports.

12.     The Debtor shall, whenever NORTHERN determines that it is necessary, make the Collateral available for inspection by NORTHERN upon five (5) day's notice from NORTHERN of its desire to inspect said Collateral.

13.     To the extent, if any, that any sums and liens claimed by NORTHERN to be owed and/or granted by the Debtor to NORTHERN have not heretofore been properly perfected, they are hereby declared to be perfected by this Order, to the same extent, validity and priority as already exists in favor of NORTHERN with respect to any of its claims against the Debtor with respect to the Property.

14.     Until such time as the Property is sold under the terms and conditions described in Sections 16 & 19 hereinbelow, the Debtor shall make adequate protection payments to NORTHERN on a monthly basis in the amount of $15,931.95 each, commencing on August 1, 2011, and a like amount on the first day of each month thereafter until the sale of the Property under the terms and conditions described in Section 18 hereinbelow, or a default by Debtor hereunder, whichever shall first occur, each of which payments shall be first applied to interest on the outstanding amount of the claim of NORTHERN in the amount of $3,018,346.90 at the rate of 4% per annum and the balance in reduction of the claim of NORTHERN.  However, nothing contained herein shall be deemed to reduce or eliminate any claim by NORTHERN for interest on its secured claim, attorneys' fees and/or costs.  The interest rate of 4% per annum set

forth herein shall not affect NORTHERN's right to seek interest on the outstanding amount of its claims at the applicable non-default rate or rates otherwise set forth in the Loan Documents provided that there have not been any defaults hereunder or under the Loan Documents arising after the date of this Stipulation

15.    This Order and all of its provisions, stipulations and understandings shall be fully binding upon all successors in interest to the instant parties, which  includes, without limitation, interim  trustees, trustees appointed under any chapter of  the  Bankruptcy Code, assignees or any entity which subsequently comes into possession or control of the rights and duties now held by the instant parties.

16.    It will be an event of default of the Stipulation and this Order if: the Debtor fails in any way whatsoever to comply fully with the obligations set forth herein; or if the Debtor fails in any way whatsoever to comply further with any non-monetary terms and obligations of the original Loan Documents; or if the Debtor fails to effectuate a sale of the Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than all amounts owed to NORTHERN by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and NORTHERN) and to pay to NORTHERN immediately at the closing all amounts owed to NORTHERN no later than six (6) months from the date of entry of this Order. Regardless of whether the Debtor or its counsel receives any notice of default, upon the occurrence or any such event of default, the Debtor will be in breach hereof and NORTHERN may notify the Debtor and Debtor's undersigned counsel of the default by e-mail.  If the default is not cured within five (5) business days of the date of the notice, then the Debtor will: (a) consent to and join in any motion by NORTHERN to require the Property to be sold pursuant to §363 of the Bankruptcy Code, with NORTHERN being allowed to credit bid up to the

aggregate amount of the indebtedness of the Debtor to NORTHERN at any such sale; and (b) stipulate that NORTHERN has, or should have, a valid and perfected first priority secured claim on the proceeds of any sale of the Property under §363 in the full amount of the indebtedness of the Debtor to NORTHERN, which should be paid over promptly to NORTHERN after confirmation of the sale under §363.

17.    Additionally, in the event of any such default, NORTHERN may notify the Debtor's undersigned counsel of the default by e-mail.  If the default is not cured within five (5) business days of the date of the notice, then NORTHERN will be entitled, without further notice or hearing, based only upon an affidavit of default by an authorized officer of NORTHERN, to entry of an order by the Bankruptcy Court which:

a.    grants NORTHERN full and complete relief from any stay, including but not limited to the stay otherwise applicable or sought under Bankruptcy Code sections 105 and 362, to foreclose on and cause the Property to be sold pursuant to a Court order, and to take any other actions necessary or appropriate under the Loan Documents or applicable law to collect its claims against the Debtor and/or the Property;

b.    directs the Debtor to abandon the Collateral peacefully to NORTHERN within five (5) days of the entry of the order; and

c.    immediately dismisses the present case as to the Property.

18.    The Court hereby abstains from hearing and dismisses this case as to the Property under Bankruptcy Code sections 305 and 1112(b); provided, however, that said abstention and dismissal shall become effective on the earlier of (a) six (6) months after the date of entry of this Order; or (b) any default under the provisions of this Order by the Debtor.

19.     If the Debtor: (1) is otherwise in full compliance with the terms hereof; (2) timely files its Disclosure Statement, and a valid contract for the sale of the Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than the aggregate amount of NORTHERN's secured claims hereunder (the "Sale Contract"); and (3) obtains a letter from NORTHERN and/or its attorney that the provisions of the Disclosure Statement, Plan, and Sale Contract are acceptable to NORTHERN and that NORTHERN is in agreement with the entry of an Order which continues the effect of the automatic stay, then the Debtor may submit to the Court a copy of said consent letter from NORTHERN, together with a proposed Agreed Order Extending Effect of Automatic Stay and Allowing Use of Collateral beyond the six (6) month period provided for in paragraph 7 of this Order, and Postponing Effective Date of Abstention and Dismissal.  If any party in interest files a written objection to the present order within fifteen (15) days of service hereof, said party may request a hearing at which time the Court will consider said objection.

20.     The Debtor's attorney shall serve a copy of the instant Order upon all parties which are set forth in Bankruptcy Rule 400l(d)(l); thereafter said attorney shall file a certificate of service.

###

Copies furnished to all CM/ECF registered users

## STIPULATION AND JOINT MOTION
## FOR ORDER APPROVING STIPULATION

The Debtor and NORTHERN hereby stipulate and pray for entry of the foregoing Order, allowing, adopting, ratifying and incorporating the stipulations between the parties and in support thereof would state as follows:

1.      Each of the parties hereto has had the benefit of independent legal advice by counsel of its own selection prior to entering into this Stipulation, and has executed this Stipulation only after undertaking a thorough investigation and consideration of all the relevant facts and circumstances surrounding this matter and has not been subjected to undue influence, fraud, coercion, duress, misrepresentation or restraint of any kind by any party in connection herewith.

2.      This stipulation is fair and in the best interest of all parties to the above-styled Chapter 11 Case.

**WHEREFORE,** the parties pray that the Court enter the foregoing Order, and grant the Debtor/Debtor-in-possession and NORTHERN such other and further relief as the Court deems just and proper.

**WE HEREBY CERTIFY** that we are admitted to the Bar of the United States District Court for the Southern District of Florida, and are in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was served via electronic transmission on all CM/ECF registered users on June _____, 2011.

Respectfully submitted,

SEGALL GORDICH P.A.
*Attorneys for Creditor Northern Trust N.A.*
801 Brickell Avenue, Suite 900
Miami, Florida  33131
Tel.:  (305) 755-4931
Fax:  (305) 438-7438

By:_____/s/ Lawrence A. Gordich_____
LAWRENCE A. GORDICH, ESQ.
Fla. Bar No. 378097
SUNDEEP K. MULLICK, ESQ.
Fla. Bar No. 18175

{1548/000/00081568}13

SHRAIBERG, FERRARA & LANDAU, P.A.
Attorneys for the Debtors
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: plandau@sfl-pa.com


By: __/s/ Philip J. Landau_____
      Philip J. Landau, Esq.
      Fla. Bar No 0504017

## EXHIBIT C

## CLAIMS ANALYSIS

# SECURED CLAIMS – MECHANIC LIENHOLDERS

| Claim No. | Claimant Name | Description of Claim | Amount of Claim |
|---|---|---|---|
| 3 | LFH Acquisition Corp. | Services Performed / Construction Lien | $8,806.41 |
| Sch. D | Atlantic Electric Construction, Inc. | Claim of Lien on 1431 Property | $8,718.86 |
| Sch. D | Atlantic Electric Corporation, Inc. | Claim of Lien on 1423 Property | $19,694.80 |
| Sch. D | Ballard Customs Elevator, Inc. | 1431 Subcontractor | $3,700.00 |
| Sch. D | Metal Art Work & Supply | Claim of Lien on 1431 Property | $0.00 |
| Sch. D | Michael Wall Plumbing Services, Inc. | Claim of Lien on 1431 Property | $7,743.45 |
| Sch. D | Michael Wall Plumbing Services, Inc. | Claim of Lien on 1423 Property | $16,973.32 |
| Sch. D | Powertec Interiors | Claim of Lien on 1431 Property | $6,194.25 |
| Sch. D | Stone Profiles, LLC | Claim of Lien on 1423 Property | $9,758.81 |

# SECURED CLAIMS

| Claim No. | Claimant Name | Description of Claim | Amount of Claim |
|---|---|---|---|
| 1 | Northern Trust, N.A. | Mortgage Note | $3,018,346.90 |
| 4 | Branch Banking & Trust Company | Final Judgment | $3,478,006.83 |
| N/A – Sch. D | Midland Loan Services, Inc. | Mortgage | $3,150,000.00 |
| 5 | Broward County Records, Taxes & Treasury Div. | Tax plus 18% interest | $13,333.46 |

## PRIORITY CLAIMS

| Claim No. | Claimant Name | Description of Claim | Amount of Claim |
|---|---|---|---|
| 6 | Internal Revenue Service | Taxes | $3,001.54 |

## UNSECURED CLAIMS

| Claim No. | Claimant Name | Description of Claim | Amount of Claim |
|---|---|---|---|
| 2 | Casale Marble Imports, Inc. | Services and materials rendered | $6,325.00 |
| N/A – Sch. F | A&S Interior | 1431 Subcontractor | $1,150.00 |
| N/A - Sch. F | Agreda Granite | 1431 Subcontractor | $3,682.75 |
| N/A - Sch. F | Allied Elevator Company, Inc. | 1427 Subcontractor | $6,300.00 |
| N/A - Sch. F | American Express | | $10,338.87 |
| N/A - Sch. F | Anisoara Manta | 1431 Subcontractor | $200.00 |
| N/A - Sch. F | Ark Capital Group, LLC – **Insider of the Debtor** | Loan Payable | $1,129,380.83 |
| N/A - Sch. F | Atlantic Stone Care, LLC | 1431 Subcontractor | $4,000.00 |
| N/A - Sch. F | Bella Lena Drainage | 1431 Subcontractor | $1,800.00 |
| N/A - Sch. F | Brunos Shower & Mirrors | 1431 Subcontractor | $3,599.00 |
| N/A - Sch. F | Colonial Cast Stone, Inc. | 1431 Subcontractor | $22,225.48 |
| N/A - Sch. F | Colonial Cast Stone, Inc. | 1427 Subcontractor | $686.12 |
| N/A - Sch. F | Darq Corp. | 1431 Subcontractor | $1,250.00 |
| N/A - Sch. F | Devolo Cabinets | 1423 Subcontractor | $3,650.00 |
| N/A - Sch. F | Fire Place Krippel | 1431 Subcontractor | $450.00 |
| N/A - Sch. F | First Priority | 1431 Subcontractor | $7,000.07 |
| N/A - Sch. F | First Priority | 1423 Subcontractor | $5,749.75 |
| N/A - Sch. F | FSR Hauling | 1431 Subcontractor | $1,200.00 |
| N/A - Sch. F | IMG Investment, LLC | Loan Payable | $43,000.00 |
| N/A - Sch. F | Joseph Kodsi – **Insider of Debtor** | Loan Payable | $200,000.00 |
| N/A - Sch. F | KIT Management, Inc. | Loan Payable | $81,500.00 |
| N/A - Sch. F | Light Bulbs Unlimited | 1431 Subcontractor | $5,754.02 |
| N/A - Sch. F | MB Lighting | 1431 Subcontractor | $1,457.78 |
| N/A - Sch. F | Metal Stair Railing | 1431 Subcontractor | $7,206.18 |
| N/A - Sch. F | Metal Works | 1423 Subcontractor | $17,940.00 |
| N/A - Sch. F | Mr. Sprinkler | 1431 Subcontractor | $2,192.91 |
| N/A - Sch. F | Pasecetter Personal Services | 1431 Subcontractor | $183.40 |
| N/A - Sch. F | Pauls Carpet | 1423 Subcontractor | $9,776.49 |
| N/A - Sch. F | Pete's Plumbing Gas | 1431 Subcontractor | $350.00 |
| N/A - Sch. F | Peter Jimenez | Loan Payable | $195,000.00 |
| N/A - Sch. F | Powertec Interiors | 1423 Subcontractor | $10,578.50 |

| N/A - Sch. F | Powertec Interiors | 1431 Subcontractor | $6,194.25 |
| N/A - Sch. F | Prestige Plumbing Services | 1431 Subcontractor | $2,710.00 |
| N/A - Sch. F | Smith & Sons Painting Interior | 1431 Subcontractor | $10,000.00 |
| N/A - Sch. F | Smith & Sons Painting Interior | 1423 Subcontractor | $4,400.00 |
| N/A - Sch. F | Solar Air, Inc. | 1431 Subcontractor | $7,248.30 |
| N/A - Sch. F | Stone Profiles, LLC | 1431 Subcontractor | $4,826.63 |
| N/A - Sch. F | Stone Profiles, LLC | 1427 Subcontractor | $15,874.89 |
| N/A - Sch. F | Tile Marble by Valentin | 1423 Subcontractor | $4,429.99 |

# Exhibit D

# ARK DEVELOPMENT/OCEANVIEW, LLC
## Vendors Payments
### As of April 26, 2011

## 3.b. PAYMENTS TO ORDINARY CREDITORS

| Type | Date | Num | | Memo | Paid Amount | Address |
|---|---|---|---|---|---|---|
| Check | 02/11/2011 | 2107 | Adrian Vieru | Reimburse Expense | -82.65 | 5302 NE 6th Ave #D Oakland Park Fl 33334 |
| Check | 02/11/2011 | 2108 | Adrian Vieru | Per 02/07/11-02/11/11 | -1,250.00 | |
| Check | 02/11/2011 | 2114 | Adrian Vieru | Additional drywall patch work | -600.00 | |
| Check | 02/15/2011 | 694 | Adrian Vieru | Per 2/14/11-2/18/11 | -1,276.17 | |
| Check | 02/15/2011 | 695 | Adrian Vieru | Additional drywall work & reimb exp | -1,045.07 | |
| Check | 02/24/2011 | 2401 | Adrian Vieru | Per 02/21/11-02/25/11 | -1,250.00 | |
| Check | 02/24/2011 | 2403 | Adrian Vieru | Reimburse expenses | -135.36 | |
| Check | 02/24/2011 | 2405 | Adrian Vieru | Additional drywall patch work | -800.00 | |
| Check | 03/01/2011 | 2411 | Adrian Vieru | Additional drywall patch work | -400.00 | |
| Check | 03/01/2011 | 2412 | Adrian Vieru | Per 02/28/11-03/04/11 | -1,250.00 | |
| Check | 03/08/2011 | 2419 | Adrian Vieru | Per 03/07/11-03/11/11 | -1,250.00 | |
| Check | 03/08/2011 | 2420 | Adrian Vieru | Additional drywall patch work | -400.00 | |
| Check | 03/17/2011 | 2431 | Adrian Vieru | Additional drywall patch work | -500.00 | |
| Check | 03/17/2011 | 2432 | Adrian Vieru | Per 03/14/11-03/18/11 | -1,250.00 | |
| Check | 03/17/2011 | 2433 | Adrian Vieru | Reimburse expense | -600.00 | |
| Check | 03/24/2011 | 2437 | Adrian Vieru | Additional drywall patch work | -11.86 | |
| Check | 03/24/2011 | 2438 | Adrian Vieru | Per 03/21/11-03/25/11 | -500.00 | |
| Check | 03/31/2011 | 2445 | Adrian Vieru | Per 03/28/11-04/01/11 | -1,250.00 | |
| Check | 03/31/2011 | 2446 | Adrian Vieru | Additional drywall patch work | -1,250.00 | |
| Check | 03/31/2011 | 2451 | Adrian Vieru | Reimburse expenses | -600.00 | |
| Check | 04/07/2011 | 2453 | Adrian Vieru | Per 04/04/11-04/08/11 | -35.59 | |
| Check | 04/07/2011 | 2454 | Adrian Vieru | Additional drywall patch work | -1,250.00 | |
| Check | 04/14/2011 | 2459 | Adrian Vieru | Additional drywall patch work | -500.00 | |
| Check | 04/14/2011 | 2461 | Adrian Vieru | Per 04/11/11-04/15/11 | -400.00 | |
| Check | 01/20/2011 | 2078 | Adrian Vieru | Per 01/14/11-01/21/11 | -1,250.00 | |
| Check | 01/20/2011 | 2086 | Adrian Vieru | Additional drywall patch work | -1,250.00 | |
| Check | 01/20/2011 | 2087 | Adrian Vieru | Reimburse expense 1431 | -1,000.00 | |
| Check | 01/27/2011 | 2091 | Adrian Vieru | Additional drywall patch work | -54.11 | |
| Check | 01/27/2011 | 2092 | Adrian Vieru | Per 01/24/11-01/28/11 | -1,000.00 | |
| Check | 02/02/2011 | 2102 | Adrian Vieru | Additional drywall patch work | -1,250.00 | |
| Check | 02/03/2011 | 2100 | Adrian Vieru | Per 01/31/11-02/04/11 | -600.00 | |
| Check | 02/03/2011 | 2101 | Adrian Vieru | Reimburse Expense | -6.87 | |
| Check | 03/04/2011 | 2416 | Agroda Marble & Granite | 1431 N - as per attached list | -6,768.10 | 2401 NW 77 Terr Miami Fl 33147 |
| Check | 03/15/2011 | 2429 | Agroda Marble & Granite | 1431 N - Balance Fireplace | -1,400.00 | |
| Check | 02/11/2011 | 2113 | All Star Toilets LLC | Inv#82774 - Service 01/16/11-02/12/11 | -71.82 | PO Box 221167 West Palm Beach Fl 33422 |
| Check | 02/25/2011 | 2406 | All Star Toilets LLC | Inv#84575- Service 02/13/11-03/12/11 | -76.74 | |
| Check | 03/30/2011 | 2447 | All Star Toilets LLC | Inv#86384- Service 03/13/11-03/16/11 | -16.42 | |
| Check | 01/24/2011 | 2050 | Andras Illanez | Additional drywall patch work | -300.00 | 4107 Heartstone Pl Boynton Beach Fl 33435 |
| Check | 02/25/2011 | 2407 | Aniscora Manta | 1431 Cleaning | -850.00 | 651 NE 59 Ct Fl Lauderdale Fl 33334 |
| Check | 03/14/2011 | 2423 | Aniscora Manta | 1427 Cleaning | -260.00 | |

## ARK DEVELOPMENT/OCEANVIEW, LLC
### Vendors Payments
### As of April 26, 2011

| Type | Date | Num | | Memo | Paid Amount | Address |
|------|------|-----|---|------|-------------|---------|
| Check | 03/01/2011 | 2406 | AT&T | Acct#954-566-3959 - 1431 N | -5.46 | P.O. BOX 105262 Atlanta GA 30348 |
| Check | 03/24/2011 | 2440 | AT&T | Per attached list | -200.36 | |
| Check | 01/21/2011 | Debit | AT&T | Per attached list - Paid by phone | -431.55 | |
| Check | 03/04/2011 | 2418 | Atlantic Electric Construction | Per attached list | -4,888.13 | P.O. Box 23865 Oakland Park Fl 33307 |
| Check | 02/01/2011 | 2096 | Atlantic Electric Construction | Inv#ov.1431.1007 - 1431 N 1/18/11 | -2,222.31 | |
| Check | 02/01/2011 | 2097 | Atlantic Electric Construction | Per attached list | -2,869.35 | |
| Check | 02/25/2011 | Debit | BB&T | fees | -405.00 | 1580 Sawgrass Corporate Parkway, Ste 310 Sunrise Fl 33323 |
| Check | 02/28/2011 | Debit | BB&T | Fees | -55.00 | |
| Check | 02/28/2011 | Debit | BB&T | Checks order for new account | -105.67 | |
| Check | 02/28/2011 | | BB&T | Service Charge | -366.67 | |
| Check | 04/14/2011 | 2469 | BB&T | 2010 R/E Taxes - 1431  N Folio #49331-01-0101 | -13,091.64 | |
| Check | 04/15/2011 | 2471 | BB&T | Final Payment -1431 N - SKG | -1,835.45 | |
| Check | 02/11/2011 | Debit | BB&T | To close fraud account | -15,263.19 | |
| Check | 02/11/2011 | 2110 | Citizens Property Insurance Corporation | 1 of 4 Pol#1465581- 1431 Wind Renewal | -2,485.60 | 6676 Corporate Center Parkway Jacksonville Fl 32216 |
| Check | 02/11/2011 | 2111 | Citizens Property Insurance Corporation | 1 of 4 Pol#1465480 - 1423 Wind Renewal | -2,485.60 | |
| Check | 02/11/2011 | 2112 | Citizens Property Insurance Corporation | 1 of 4 Pol#1466092 -1427 Wind Renewal | -2,485.60 | |
| Check | 02/11/2011 | 2106 | CITY OF FORT LAUDERDALE | CO 1427 N Atlantic | -363.45 | P.O. Box 31687 Tampa Fl 33631 |
| Check | 02/15/2011 | 091 | CITY OF FORT LAUDERDALE | Per attached list | -243.15 | |
| Check | 02/17/2011 | 097 | CITY OF FORT LAUDERDALE | Per attached list | -101.95 | |
| Check | 02/24/2011 | 2404 | CITY OF FORT LAUDERDALE | Permit#060622{3-Reasignment new plumber | -88.00 | |
| Check | 03/14/2011 | 2426 | CITY OF FORT LAUDERDALE | Revision #9 | -88.00 | |
| Check | 03/17/2011 | 2435 | CITY OF FORT LAUDERDALE | Per attached list | -288.40 | |
| Check | 03/29/2011 | 2442 | CITY OF FORT LAUDERDALE | Revision - Icyrene insulation | -75.00 | |
| Check | 03/29/2011 | 2443 | CITY OF FORT LAUDERDALE | Electrical Revision | -75.00 | |
| Check | 03/31/2011 | 2449 | CITY OF FORT LAUDERDALE | Mechanical Revision | -75.00 | |
| Check | 04/00/2011 | 2455 | CITY OF FORT LAUDERDALE | Mechanical Revision | -88.00 | |
| Check | 04/11/2011 | 2456 | CITY OF FORT LAUDERDALE | Structural & Mechanical revision | -178.00 | |
| Check | 04/11/2011 | 2457 | CITY OF FORT LAUDERDALE | Electrical revision | -88.00 | |
| Check | 04/14/2011 | 2464 | CITY OF FORT LAUDERDALE | Submittal for C.O. 1431 | -583.45 | |
| | | | CITY OF FORT LAUDERDALE | Per attached list | -376.71 | |
| Check | 03/04/2011 | 2415 | Colonial Cast Stone Inc | as per 1/28/11 -1431 N | -16,400.30 | 5500 Georgia Ave West Palm Beach Fl 33405 |
| Check | 01/20/2011 | 2090 | Colonial Cast Stone Inc | 1431 N - Deposit | -7,177.00 | |
| Check | 03/31/2011 | 2459 | Devoe Lawn & Tree Service | Lawn service | -75.00 | 1600 NW 33rd Rd Pompano Beach Fl 33064 |
| Check | 03/01/2011 | 2409 | DIARO CORP | Punch out - 1431 N | -250.00 | |
| Check | 04/14/2011 | 2470 | FLORIDA DEPARTMENT OF STATE | Doc#L0C000022434 Annual report 2011 | -138.75 | 2661 Executive Center Circle Tallahassee Fl 32301 |
| Check | 02/15/2011 | 093 | FPL | Per attached list | -760.64 | GENERAL MAIL FACILITY Miami Fl 33188 |
| Check | 03/14/2011 | 2427 | FPL | Per attached list | -1,016.81 | |
| Check | 04/14/2011 | 2465 | FPL | Per attached list | -1,476.78 | |
| Check | 01/24/2011 | 2089 | FPL | Acct#00128-77040 -1423 N | -310.56 | |

# ARK DEVELOPMENT/OCEANVIEW,LLC
## Vendors Payments
### As of April 26, 2011

| Type | Date | Num | | Memo | Paid Amount | Address |
|---|---|---|---|---|---|---|
| Check | 03/14/2011 | 2424 | Jean Claude DelHomme | 1431 N - Stucco Work | -50.00 | 232 Utah Ave Ft Lauderdale Fl 33312 |
| Check | 03/17/2011 | 2436 | MC LAUGHLIN ENGINEERING COMPANY | Inv#U6439 - Final Survey | -500.00 | 400 NE 3rd Ave Ft Lauderdale Fl 33301 |
| Check | 03/04/2011 | 2417 | Metal Art Work & Supply | Balance Inv#205 - 1431 N | -4,182.50 | 249 SW 21 Terrace Ft Lauderdale Fl 33312 |
| Check | 03/15/2011 | 2430 | Metal Art Work & Supply | Balance Inv#216 - 1431 N | -1,250.00 | |
| Check | 01/20/2011 | 2079 | Metal Art Work & Supply | Partial payment Est #195 - 1431 N | -4,182.50 | |
| Check | 04/14/2011 | 2466 | Northern Trust, N.A | Loan#1050221931 thru 03/15/11 | -33,267.88 | 595 Baltimore Way Coral Gables Fl 33134 |
| Check | 03/01/2011 | 2410 | Ocean Mist Pool Service LLC | Per attached list | -540.00 | 1100 E Oakland Park Blvd #108 Oakland Park Fl 33334 |
| Check | 04/11/2011 | 2458 | Ocean Mist Pool Service LLC | Per attached list | -270.00 | |
| Check | 01/20/2011 | 2083 | Pasecotter Personal Services | Per attached list | -839.52 | P.O. Box 594005 Houston Tx 77259 |
| Check | 02/01/2011 | 2508 | Pasecotter Personal Services | Inv#J48926FTL - 1431 N | -80.08 | |
| Check | 01/20/2011 | 2082 | Powertech Interiors Inc | Per attached list | -1,946.00 | 560 South Andrews Ave Pompano Beach Fl 33069 |
| Check | 02/11/2011 | 2109 | Premium Assignment Corporation | 7 of 10 payment - Acct# 785791 (ADOV) | -1,763.16 | 3522 Thomasville Road, Suite 400 Tallahassee Fl 32309 |
| Check | 03/01/2011 | 2414 | Premium Assignment Corporation | Acct#765243 JP Insurance (GC) - 9 of 10 | -834.24 | |
| Check | 03/14/2011 | 2428 | Premium Assignment Corporation | 8 of 10 payment - Acct# 785791 (ADOV) | -1,763.16 | |
| Check | 03/24/2011 | 2439 | Premium Assignment Corporation | Acct#765243 JP Insurance (GC) - 10 of 10 | -834.24 | |
| Check | 04/14/2011 | 2462 | Premium Assignment Corporation | 9 of 10 payment - Acct# 785791 (ADOV) | -1,763.16 | |
| Check | 02/11/2011 | 2115 | RICHARD L FOSTER | Per 02/07/11~02/11/11 = 8 hours | -250.00 | 2856 NE 26TH AVE Ft Lauderdale Fl 33306 |
| Check | 02/15/2011 | 096 | RICHARD L FOSTER | Per 02/14/11~02/18/11 = 8 hours | -250.00 | |
| Check | 02/24/2011 | 2402 | RICHARD L FOSTER | Per 02/21/11~02/25/11 = 8.5 hours | -265.63 | |
| Check | 03/01/2011 | 2413 | RICHARD L FOSTER | Per 02/28/11~03/04/11 = 8 hours | -250.00 | |
| Check | 03/08/2011 | 2421 | RICHARD L FOSTER | Per 03/07/11~03/11/11 = 8.5 hours | -265.63 | |
| Check | 03/16/2011 | 2434 | RICHARD L FOSTER | Per 03/14/11~03/18/11 = 8 hours | -250.00 | |
| Check | 03/24/2011 | 2441 | RICHARD L FOSTER | Per 03/21/11~03/25/11 = 8 hours | -250.00 | |
| Check | 03/31/2011 | 2448 | RICHARD L FOSTER | Per 03/28/11~04/01/11 = 7.5 hours | -234.38 | |
| Check | 04/07/2011 | 2452 | RICHARD L FOSTER | Per 04/04/11~04/08/11 = 8 hours | -250.00 | |
| Check | 04/14/2011 | 2460 | RICHARD L FOSTER | Per 04/11/11~04/15/11 = 7 hours | -218.75 | |
| Check | 01/20/2011 | 2081 | RICHARD L FOSTER | Per 01/17/11~01/21/11 = 9 hours | -281.25 | |
| Check | 01/27/2011 | 2093 | RICHARD L FOSTER | Per 01/24/11~01/28/11= 9.5 hours | -296.88 | |
| Check | 02/02/2011 | 2103 | RICHARD L FOSTER | Per 01/31/11~02/04/11 = 8 hours | -250.00 | |
| Check | 02/03/2011 | 2105 | Rick Carpenter Inc | 1423 N -Work | -905.59 | 1811 NW 58 Ave Lauderhill Fl 33313 |
| Check | 03/28/2011 | 2444 | STATE OF FLORIDA | State permit for 1431 N | -1,000.00 | |
| Check | 02/03/2011 | 2104 | STATEWIDE CONDOMINIUM INSURANCE | Flood Insurance 2011-2012 - 1427 N | -315.00 | 1425 20TH STREET Vero Beach Fl 32960 |
| Check | 04/14/2011 | 2467 | Stone Profiles | Final payment - 1431 N | -4,826.63 | 1127 Poinsettia Drive Delray Beach Fl 33444 |

# ARK DEVELOPMENT/OCEANVIEW,LLC
## Vendors Payments
### As of April 26, 2011

| Type | Date | Num | | | Memo | Paid Amount | Address |
|---|---|---|---|---|---|---|---|
| Check | 02/16/2011 | 092 | Teco Peoples Gas | | Acct#16108217 - 1427 N | -17.56 | P.O. Box 31017 Tampa Fl 33631 |
| Check | 03/14/2011 | 2425 | Teco Peoples Gas | | Acct#16108217 - 1427 N | -17.56 | |
| Check | 04/14/2011 | 2463 | Teco Peoples Gas | | Acct#16108217 - 1427 N | -17.56 | |
| Check | 01/27/2011 | 2094 | Trindade Finish Carpentry Corp | | 1431 N - Balance | -820.00 | 1601 NE 39th Street Pompano Beach Fl 33064 |
| Check | 02/11/2011 | 2099 | Ultimate Landscape LLC | | 1431 N payment | -3,100.00 | 8927 Hypoluxo Rd, Ste A-214 Lake Worth Fl 33467 |
| Check | 02/01/2011 | 2095 | Ultimate Landscape LLC | | 1427 N payment | -3,100.00 | |
| 1 Check | 01/24/2011 | 2088 | American Express | | Acct#3715-485234-31004 - AD/OV | -143.18 | |
| 2 Check | 02/02/2011 | Debit | American Express | | Acct#3715-376896-92002 - AD/OV-Paid by phone | -36,350.34 | |
| 3 Check | 03/03/2011 | Debit | American Express | | Acct#3715-376896-92002 - J.K. Paid by phone | -13,454.92 | |
| 4 Check | 04/07/2011 | Debit | American Express | | Acct#3715-376896-92002 - J.K. Paid by phone | -10,328.22 | |
| **AMERICAN EXPRESS PAYMENTS** | | | | | | | |
| Check | 01/24/2011 | 2088 | American Express | | All Start Toilets | 143.18 | PO Box 221167 West Palm Beach Fl 33422 |
| | | | | | | -36,350.34 | |
| Check | 02/02/2011 | Debit | American Express | | All Construction | 1,019.89 | 1201 SW 4th Ave Dania Beach Fl 33004 |
| | | | | | Banner Supply | 414.50 | 1660 SW 13 Ct Pompano Beach Fl 33069 |
| | | | | | Kitchen Works | 15,725.00 | 1808 East Sunrise Blvd Ft Lauderdale Fl 33304 |
| | | | | | M&C Pavers | 1,993.50 | 11 SW 5th Court Pompano Beach Fl 33060 |
| | | | | | M&C Pavers | 2,935.00 | 11 SW 5th Court Pompano Beach Fl 33060 |
| | | | | | NB Lighting | 2,915.68 | PO Box 10464 Pompano Beach Fl 33061 |
| | | | | | Mirrors & Crafters | 6,727.00 | 1530 SW 5th Ct Pompano Beach Fl 33069 |
| | | | | | Smith & Sons | 3,000.00 | 3500 NE 28th Ave Lighthouse Point Fl 33064 |
| | | | | | The Islandoor | 1,504.00 | 651 N Powerline Rd Ft Lauderdale Fl 33311 |
| | | | | | Wool Supply | 125.57 | 1321 NE 12th Ave Ft Lauderdale Fl 33304 |
| | | | | | | -13,454.92 | |
| Check | 03/03/2011 | Debit | American Express | | Banner Supply | 682.89 | 1660 SW 13 Ct Pompano Beach Fl 33069 |
| | | | | | FSR | 500.00 | 1440 SW 31 Ave Pompano Beach Fl 33069 |
| | | | | | Jam Lighting | 2,271.23 | 4100 N Powerline Rd Ste O-5 Pompano Beach Fl 33073 |
| | | | | | Jam Lighting | 206.66 | 4100 N Powerline Rd Ste O-5 Pompano Beach Fl 33073 |
| | | | | | Kitchen Works | 364.64 | 1808 East Sunrise Blvd Ft Lauderdale Fl 33304 |
| | | | | | Marble of the World | 2,196.71 | 6001 Powerline Rd t Lauderdale Fl 33309 |
| | | | | | Pool Guard | 657.20 | 2905 Alabatross  Cooper City Fl 33026 |
| | | | | | Smith & De Shields | 151.88 | 165 NW 20th St Boca Raton Fl 33431 |
| | | | | | Smith & Sons | 3,000.00 | 3520 NE 28th Ave Lighthouse Point Fl 33064 |
| | | | | | The Blind Factory | 2,597.00 | 3368 W Hillsboro Blvd Deerfield Beach Fl 33442 |
| | | | | | Wool Supply | 416.17 | 1321 NE 12th Ave Ft Lauderdale Fl 33304 |
| | | | | | Wool Supply | 409.94 | 1321 NE 12th Ave Ft Lauderdale Fl 33304 |
| | | | | | | -10,329.22 | |
| Check | 04/07/2011 | Debit | American Express | | Clad Tile & Stone | 428.17 | 1106 NE 4th Ave Fl 33304 |
| | | | | | Crisscross | 500.00 | 270 NW 193rd St Miami Fl 33169 |

## ARK DEVELOPMENT/OCEANVIEW,LLC
### Vendors Payments
As of April 26, 2011

| Type | Date | Num | Memo | Paid Amount | Address |
|------|------|-----|------|-------------|---------|
| | | | FSR | 450.00 | 1440 SW 31 Ave Pompano Beach Fl 33069 |
| | | | Kitchen Works | 1,875.00 | 1806 East Sunrise Blvd Ft Lauderdale Fl 33304 |
| | | | M&C Pavers | 1,110.00 | 11 SW 5th Court Pompano Beach Fl 33060 |
| | | | MB Lighing | 4,124.17 | P O B 10454 Pompano Bech Fl 33061 |
| | | | The Islandkor | 477.36 | 851 N Powerline Rd Ft Lauderdale Fl 33311 |
| | | | Tropical Air | 1,327.00 | 12342 Wiles Rd Coral Spring Fl 33076 |
| | | | Wood Supply | 36.52 | 1321 NE 12th Ave Ft Lauderdale Fl 33304 |

American Express New Charges

| | | | | | |
|------|------|-----|------|-------------|---------|
| 03/15/11 | | | FSR Transporting | 400.00 | 1440 SW 31 Ave Pompano Beach Fl 33069 |
| 03/31/11 | | | Jam Lighting | 526.60 | 4100 N Powerline Rd Ste O-5 Pompano Beach Fl 33073 |
| 04/12/11 | | | Jam Lighting | 485.27 | 4100 N Powerline Rd Ste O-5 Pompano Beach Fl 33073 |
| 03/15/11 | | | Smith & Sons | 3,725.00 | 3520 NE 28th Ave Lighthouse Point Fl 33064 |
| 04/15/11 | | | The Kitchen Works - final | 5,203.00 | 1806 East Sunrise Blvd Ft Lauderdale Fl 33304 |

## 3.c. PAYMENTS TO INSIDERS

| Type | Date | Num | Name | Paid Amount | Address |
|------|------|-----|------|-------------|---------|
| Check | 04/18/2011 | 2474 | ARK FINANCIAL | -30,244.27 | 701 W Cypress Creek Rd #301 Fl Lauderdale Fl 33309 |
| Check | 09/28/2010 | 1938 | ARK FINANCIAL | -6,000.00 | |
| Check | 11/18/2010 | 2004 | ARK FINANCIAL | -50,000.00 | |
| Check | 11/19/2010 | 2006 | ARK FINANCIAL | -50,000.00 | |
| Check | 09/30/2010 | Wire | K & B CAPITAL | -25,000.00 | |
| Check | 06/03/2010 | 1769 | Kodsi Eisenstein & Associates P.A | -5,000.00 | 701 W Cypress creek Rd # 301 Fl Lauderdale Fl 33309 |
| Check | 03/11/2011 | 2422 | KODSI LAW FIRM | -50,000.00 | 701 W Cypress creek Rd # 301 Fl Lauderdale Fl 33309 |
| Check | 04/18/2011 | 2473 | KODSI LAW FIRM | -3,000.00 | 701 W Cypress creek Rd # 301 Fl Lauderdale Fl 33309 |
| Check | 06/03/2010 | 1767 | KODSI LAW FIRM | -45,000.00 | |
| Check | 07/20/2010 | 1863 | KODSI LAW FIRM | -248.12 | |
| | | | | -450.13 | |

## 3.c. PAYMENTS TO INSIDERS

| Type | Date | Num | Name | Paid Amount | Address |
|------|------|-----|------|-------------|---------|
| Check | 04/18/2011 2474 | | ARK FINANCIAL | -30,244.27 | 701 W Cypress Creek Rd #301 Ft Lauderdale Fl 33309 |
| Check | 09/20/2010 1938 | | ARK FINANCIAL | -6,000.00 | |
| Check | 11/18/2010 2004 | | ARK FINANCIAL | -60,000.00 | |
| Check | 11/19/2010 2006 | | ARK FINANCIAL | -25,000.00 | |
| Check | 09/30/2010 Wire | | K & B CAPITAL | -5,000.00 | |
| Check | 08/03/2010 1769 | | Kodsi Eisenstein & Associates P.A | -50,000.00 | 701 W Cypress creek Rd # 301 Ft Lauderdale Fl 33309 |
| Check | 03/11/2011 2422 | | KODSI LAW FIRM | -3,000.00 | 701 W Cypress creek Rd # 301 Ft Lauderdale Fl 33309 |
| Check | 04/18/2011 2473 | | KODSI LAW FIRM | -66,000.00 | 701 W Cypress creek Rd # 301 Ft Lauderdale Fl 33309 |
| Check | 09/03/2010 1767 | | KODSI LAW FIRM | -246.12 | |
| Check | 07/20/2010 1663 | | KODSI LAW FIRM | -450.13 | |

Isaac Kodsi
701 West Cypress Creek Road, Third Floor
Fort Lauderdale, FL 33309
50% owner and managing member

$197,569.03 on 5/7/2010;
$109,783.96 on 6/21/2010;
$262,024.78 on 8/4/2010;
$172,254.96 on 9/14/2010;
and $152,835.90 on
11/1/2010.

$894,468.63                          $0.00