

**ORDERED in the Southern District of Florida on August 02, 2011.**

John K. Olson, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| In re: | Chapter 11 |
|---|---|
| ARK DEVELOPMENT/OCEANVIEW, LLC, | Case No. 11-20382-JKO |
| Debtor. | |

**FINAL ORDER GRANTING JOINT EXPEDITED MOTION
FOR ORDER APPROVING AGREEMENT, GRANTING ADEQUATE PROTECTION,
RELIEF FROM STAY, ABSTENTION AND DISMISSAL OF CASE [D.E. 69]**

**Any interested party who fails to file and serve a written response to this Order within fourteen (14) days after the date of service, pursuant to Local Rule 4001-1(C) is deemed to have consented to the relief contained in this Order.**

**THIS MATTER** came before the Court on July 26, 2011, upon the *Joint Expedited Motion For Order Approving Agreement between the Debtor/Debtor-in-possession, ARK DEVELOPMENT/OCEANVIEW, LLC (the "Debtor") and the Creditor, NORTHERN TRUST N.A. ("NORTHERN"), Granting Adequate Protection and Relief From*

{1548/000/00084174}1

*Stay* (the "Joint Expedited Motion") [D.E. 69] and the Court having reviewed the file, considered said Joint Expedited Motion, considered the arguments and representations of counsel, being otherwise fully advised in the premises, and believing that good cause exists,

THE COURT HEREBY FINDS:

A. On April 18, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued as a debtor-in-possession.

B. NORTHERN holds valid and perfected security interests and secured claims; said claims are evidenced and secured by that certain: (a) Construction Loan Agreement dated June 15, 2007; (b) Note dated June 15, 2007; (c) Mortgage and Security Agreement dated June 15, 2007, recorded June 29, 2007, in Official Records Book 44262, at Page 1970, of the Public Records of Broward County, Florida; (d) Loan Modification Agreement dated May 11, 2010; (e) Second Loan Modification Agreement dated October 26, 2010; and (f) Third Loan Modification Agreement dated March 30, 2011. Copies of all of said documents (collectively the "Loan Documents") are attached as composite **Exhibit "A"** to the Joint Expedited Motion.

C. Section 12 of the aforesaid Third Loan Modification Agreement dated March 30, 2011, to which the Debtor was a party pre-petition, expressly provided as follows:

> 12. <u>Bankruptcy</u>. In entering into this Agreement, Borrower, Guarantor and Lender hereby stipulate, acknowledge and agree that Lender gave up valuable rights and agreed to abstain from exercising certain legal remedies available to it in exchange for the promises, representations, acknowledgements and warranties of Borrower and Guarantor as contained herein, including without limitation, that the Borrower and Guarantor have already paid, by and through this Agreement, an ample opportunity to reorganize and/or restructure their debt. In fact, the present Agreement was requested by the Borrower and Guarantor and, thereafter, agreed to by the Lender based upon the very specific promise, representation, acknowledgement and warranty of Borrower and Guarantor that this Agreement and the terms and

conditions contained therein would give the Borrower and Guarantor more than sufficient and ample opportunity to reorganize and/or restructure their debt so that if the Borrower and/or Guarantor subsequently filed a petition for relief under the Bankruptcy Code it should be dismissed as a "Bad Faith" filing in that the Borrower and Guarantor have already bargained for and received sufficient opportunity to reorganize and/or restructure their debt; and that Lender would not have entered into this Agreement but for such promises, representations, acknowledgements, agreements, and warranties, all of which have been accepted by Lender in good faith, the breach of which by Borrower or Guarantor in any way, at any time, now or in the future, would admittedly and confessedly constitute cause for dismissal of any such bankruptcy petition pursuant to 11 U.S.C. §1112(b).

As additional consideration for Lender agreeing to abstain from immediately enforcing its rights and remedies under the Loans, Notes, Mortgage, Guaranties, and the other Loan Documents, including the First Loan Modification Agreement and Second Loan Modification Agreement, including but not limited to the initiation of foreclosure proceedings, Borrower and Guarantor agree that in the event a bankruptcy petition under any Chapter of the Bankruptcy Code (11 U.S.C. §101, *et seq.*) is filed by or against Borrower and Guarantor at any time after the execution of this Agreement, Lender shall be entitled to the immediate entry of any order from the appropriate bankruptcy court granting Lender complete relief from the automatic stay imposed by §362 of the Bankruptcy Code (11 U.S.C. §362) to exercise its foreclosure and other rights, including but not limited to obtaining a foreclosure judgment and foreclosure sale, upon the filing with the appropriate court of a motion for relief from the automatic stay with a copy of this Agreement attached thereto. Borrower and Guarantor specifically agree (i) that upon filing a motion for relief from the automatic stay, Lender shall be entitled to relief from the stay without the necessity of an evidentiary hearing and without the necessity or requirement of the Lender to establish or prove the value of the property securing the obligations under the Loans, Notes, Mortgage, Guaranties, and the other Loan Documents, including the First Loan Modification Agreement and Second Loan Modification Agreement, (the "Property"), the lack of adequate protection of its interest in the Property, or the lack of equity in the Property; (ii) that the lifting of the automatic stay hereunder by the appropriate bankruptcy court shall be deemed to be "for cause" pursuant to §362(d)(l) of the Bankruptcy Code (11 U.S.C. §362(d)(l); and (iii) that Borrower and Guarantor will not directly or indirectly oppose or otherwise defend against Lender's efforts to gain relief from the automatic stay. This provision is not intended to preclude Borrower and Guarantor from filing for protection under any Chapter of the Bankruptcy Code. The remedies prescribed in

> this paragraph are not exclusive and shall not limit Lender's rights under the Loans, Notes, Mortgage, Guaranties, and the other Loan Documents, including the First Loan Modification Agreement and Second Loan Modification Agreement, this Agreement or under any law.
>
> All of the above terms and conditions have been freely bargained for and are all supported by reasonable, adequate and sufficient consideration and the provisions herein are material inducements for Lender entering in this Agreement.

D. As of April 22, 2011, the claim of NORTHERN was in the amount of $3,018,346.90 plus a per diem of $594.29 thereafter, plus reasonable costs and attorneys' fees; said claim is secured under Bankruptcy Code § 506 by a good, valid and duly perfected security interest in certain property (the "Property") the legal description of the real property portion of which is the following:

> All that portion of Lot 5, Block 8, LAS OLAS BY THE SEA EXTENSION, according to the Plat thereof, recorded in Plat Book 3, at Page 8, of the Public Records of Broward County, Florida, lying west of the west right of way line of State Road A-1-A as shown on right-of-way map of same Sheet #4 and recorded in Right-of-Way Map Book 2, Page 48, Broward County, City of Ft. Lauderdale, Florida.

E. Prior to the Petition Date, the Debtor was in the process of constructing a residence on the Property. After the Petition Date, the Debtor completed construction of said residence on the Property and a certificate of occupancy for the residence has been issued by the City of Fort Lauderdale.

F. The Debtor has failed to make timely payments and is now in default under the terms of the subject Loan Documents with NORTHERN.

G. The proceeds from the Property, which include, without limitation, all of the real and personal property described above, together with the rents, issues and profits and insurance

proceeds generated thereby, are "cash collateral" (which together with the Property itself shall hereinafter be referred to as the "Collateral").

H. The Debtor believes that NORTHERN is adequately secured by the Property.

I. The Debtor continues to remain in possession of and use the Collateral, subjecting it to depreciation and a risk of loss.

J. NORTHERN asserts that it lacks adequate protection for its interest in the Collateral because the Collateral will continue to depreciate in value over the period of time in which this Order is in effect; the Debtor is unable to make complete adequate protection payments at the pre-judgment rate of 7.14% per annum nor the judgment rate of 6% per annum.

K. The parties assert that the relief requested in the Joint Expedited Motion and provided herein, is necessary, essential and appropriate for the continued survival and operation of the Debtor's business, absent which the Debtor's ability to maximize the value of its estate will be irreparably jeopardized to the detriment of its creditors.

L. The Court hereby finds that the Agreement and this Order have been negotiated and agreed to by the parties in good faith, and that NORTHERN is a good-faith lender herein pursuant to Bankruptcy Code section 364(e).

M. The Court has core jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

N. Notice of the hearing on the Joint Expedited Motion has been duly-served upon (i) the United States Trustee for the Southern District of Florida; (ii) counsel for the Lender; (iii) the 20 largest unsecured non-insider creditors of the Debtor's estate; (iv) all creditors known to the Debtor who may have liens or other interests in and against the Debtor's assets; and (v) any party in interest who has filed a notice of appearance and request for

service of papers in this Chapter 11 case and served same upon Debtor's counsel. Such notice constitutes sufficient notice under Bankruptcy Rule 4001(c)(3), and no other notice need be given.

O. Good cause has been shown for the entry of this Order. The parties assert that among other things, entry of this Order will minimize disruption of the Debtor's business and operations and permit the Debtor to attempt to maximize the value of the Property.

**NOW, THEREFORE,** upon the aforesaid findings and the record of the proceedings heretofore held before this Court with respect to the Joint Expedited Motion,

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. The Joint Expedited Motion is **GRANTED** as set forth herein.

2. The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be necessary to implement the terms and conditions of this Order and the transactions described herein and in the Joint Expedited Motion.

3. Except for sales rendered in the ordinary course of its business, and except as otherwise provided herein, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of the Property without the prior written consent of NORTHERN, which shall not be unreasonably withheld, and no such consent shall ever be implied from any other action, inaction or acquiescence by NORTHERN, unless such sale, transfer, lease, encumbrance or other disposition is approved by this Court.

4. The Debtor shall timely serve upon NORTHERN all pleadings and other documents filed in this Chapter 11 case, including monthly financial reports required by the

United States Trustee's office, and shall continue to supply to NORTHERN such reports as requested by NORTHERN.

5. Except as otherwise provided herein, the terms of this Order shall be valid and binding upon the Debtor, all creditors of the Debtor and all other parties in interest *nunc pro tunc* to the Petition Date.

6. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other Court, without NORTHERN's and the Debtor's prior written consent, such stay, modification or vacation shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor to NORTHERN that is or was incurred pursuant to this Order before NORTHERN's receipt of notice of the effective date of such stay, modification or vacation.

7. Nothing contained in this Order shall be deemed a waiver by NORTHERN of any objection(s) it may raise to any claims of insiders, as defined in the Bankruptcy Code.

8. Provided that the Debtor fully complies with the terms and conditions of this Order, the Debtor shall remain in possession and control of the Property for up to six (6) months from the date hereof pursuant to Bankruptcy Code § 543(d)(l).

9. The Debtor has no defenses, setoffs or counterclaims ("counterclaims") against NORTHERN, its officers, directors, employees and/or the abovementioned indebtedness; to the extent that such counterclaims do or did exist, they are specifically released and waived by the Debtor on behalf of the estate; NORTHERN shall not be subject to any claims for administrative expenses and/or surcharges arising under or by virtue of applicable law, including, without limitation, Bankruptcy Code §§ 503 or 506(c).

10. In addition to the other terms of this Order, the following provisions, requirements and conditions shall also be applicable:

A. Within thirty (30) days of the date of this Order, the Debtor shall provide NORTHERN with an updated detailed budget and punch list for the completion of punch-list work and/or cleaning at the Property, which shall be subject to NORTHERN's approval in its sole discretion. In the event NORTHERN approves the budget and punch list, and NORTHERN agrees to fund the completion of the Property (in Northern's sole discretion), the Debtor shall file with the Court a motion to approve this post-petition financing.

B. NORTHERN shall have the right to inspect the Property from time to time using its designated engineer, architect or other construction consultants to ascertain that the budget appears to be adequate to complete the punch-list work and/or cleaning at the Property and Debtor shall grant access to the Property to NORTHERN and its designees upon reasonable advance notice of not more than 5 calendar days.

C. Within ten (10) business days of the date of this Order, the Guarantors under the Loan Documents shall provide NORTHERN with updated personal financial statements and copies of their latest federal income tax returns.

D. The Guarantors under the Loan Documents must execute and deliver to NORTHERN reaffirmations of their personal guarantees in such form as NORTHERN in its sole discretion shall require.

E. The Debtor and NORTHERN shall comply further with the terms and obligations of the original Loan Documents except to the extent varied therefrom by this Order.

F. The Debtor shall use its best efforts to effectuate a sale of the Property prior to the expiration of six (6) months from the date of entry of this Order for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than all amounts owed to NORTHERN by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and NORTHERN) and provided that the net sale proceeds up to the amount of, but not more than, NORTHERN's secured claim shall be paid to NORTHERN at the closing of the sale of the Property.

G. In the event the Debtor obtains an offer to purchase the Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than an amount equal to all amounts owed to NORTHERN by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and NORTHERN) and provided that the net sale proceeds shall be paid to

NORTHERN at the closing of the sale of the Property, NORTHERN shall agree to such sale in full satisfaction of its claims.

11. With respect to the Property, other than routine expenses for the preservation and maintenance of the Property, the Debtor may not, without prior written consent of NORTHERN, make any prepayments with respect to services which have not been rendered, goods which have not been received, or any other items of expenses for which payment is not currently due.

12. Upon reasonable notice, NORTHERN shall be entitled to inspect the books, records and accounts of the Debtor at the office of the Debtor; and the Debtor shall timely file its Debtor-in-possession reports.

13. The Debtor shall, whenever NORTHERN determines that it is necessary, make the Collateral available for inspection by NORTHERN upon five (5) day's notice from NORTHERN of its desire to inspect said Collateral.

14. To the extent, if any, that any sums and liens claimed by NORTHERN to be owed and/or granted by the Debtor to NORTHERN have not heretofore been properly perfected, they are hereby declared to be perfected by this Order, to the same extent, validity and priority as already exists in favor of NORTHERN with respect to any of its claims against the Debtor with respect to the Property.

15. Until such time as the Property is sold under the terms and conditions described in Sections 16 & 19 hereinbelow, the Debtor shall make adequate protection payments to NORTHERN on a monthly basis in the amount of $15,931.95 each, commencing on August 1, 2011, and a like amount on the first day of each month thereafter until the sale of the Property under the terms and conditions described in Section 18 hereinbelow, or a default by Debtor hereunder, whichever shall first occur, each of which payments shall be first applied to interest on the outstanding amount of the claim of NORTHERN in the amount of $3,018,346.90 at the

rate of 4% per annum and the balance in reduction of the claim of NORTHERN. However, nothing contained herein shall be deemed to reduce or eliminate any claim by NORTHERN for interest on its secured claim, attorneys' fees and/or costs. The interest rate of 4% per annum set forth herein shall not affect NORTHERN's right to seek interest on the outstanding amount of its claims at the applicable non-default rate or rates otherwise set forth in the Loan Documents provided that there have not been any defaults hereunder or under the Loan Documents arising after the date of this Order.

16. This Order and all of its provisions, stipulations and understandings shall be fully binding upon all successors in interest to the instant parties, which includes, without limitation, interim trustees, trustees appointed under any chapter of the Bankruptcy Code, assignees or any entity which subsequently comes into possession or control of the rights and duties now held by the instant parties.

17. It will be an event of default of the Agreement and this Order if: the Debtor fails in any way whatsoever to comply fully with the obligations set forth herein; or if the Debtor fails in any way whatsoever to comply further with any non-monetary terms and obligations of the original Loan Documents; or if the Debtor fails to effectuate a sale of the Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than all amounts owed to NORTHERN by the Debtor (or such lesser amount as may be otherwise agreed to in writing by both the Debtor and NORTHERN) and to pay to NORTHERN immediately at the closing all amounts owed to NORTHERN no later than six (6) months from the date of entry of this Order. Regardless of whether the Debtor or its counsel receives any notice of default, upon the occurrence or any such event of default, the Debtor will be in breach hereof and NORTHERN may notify the Debtor and Debtor's undersigned counsel of the default by e-mail. If the default

is not cured within five (5) business days of the date of the notice, then the Debtor will: (a) consent to and join in any motion by NORTHERN to require the Property to be sold pursuant to §363 of the Bankruptcy Code, with NORTHERN being allowed to credit bid up to the aggregate amount of the indebtedness of the Debtor to NORTHERN at any such sale; and (b) stipulate that NORTHERN has, or should have, a valid and perfected first priority secured claim on the proceeds of any sale of the Property under §363 in the full amount of the indebtedness of the Debtor to NORTHERN, which should be paid over promptly to NORTHERN after confirmation of the sale under §363.

18. Additionally, in the event of any such default, NORTHERN may notify the Debtor's undersigned counsel of the default by e-mail. If the default is not cured within five (5) business days of the date of the notice, then NORTHERN will be entitled, without further notice or hearing, based only upon an affidavit of default by an authorized officer of NORTHERN, to entry of an order by the Bankruptcy Court which:

a. grants NORTHERN full and complete relief from any stay, including but not limited to the stay otherwise applicable or sought under Bankruptcy Code sections 105 and 362, to foreclose on and cause the Property to be sold pursuant to a Court order, and to take any other actions necessary or appropriate under the Loan Documents or applicable law to collect its claims against the Debtor and/or the Property;

b. directs the Debtor to abandon the Collateral peacefully to NORTHERN within five (5) days of the entry of the order; and

c. immediately dismisses the present case as to the Property.

19. The Court hereby abstains from hearing and dismisses this case as to the Property under Bankruptcy Code sections 305 and 1112(b); provided, however, that said abstention and

dismissal shall become effective on the earlier of (a) six (6) months after the date of entry of this Order; or (b) any default under the provisions of this Order by the Debtor.

20. If the Debtor: (1) is otherwise in full compliance with the terms hereof; (2) timely files its Disclosure Statement, and a valid contract for the sale of the Property for all cash with net sale proceeds, after all expenses of sale are deducted, of not less than the aggregate amount of NORTHERN's secured claims hereunder (the "Sale Contract"); and (3) obtains a letter from NORTHERN and/or its attorney that the provisions of the Disclosure Statement, Plan, and Sale Contract are acceptable to NORTHERN and that NORTHERN is in agreement with the entry of an Order which continues the effect of the automatic stay for such period of time as agreed to by Northern Trust in its sole discretion, then the Debtor may submit to the Court a copy of said consent letter from NORTHERN, together with a proposed Agreed Order Extending Effect of Automatic Stay and Allowing Use of Collateral beyond the six (6) month period provided for in paragraph 7 of this Order, and Postponing Effective Date of Abstention and Dismissal for the period of time agreed to by Northern Trust (in its sole discretion) within the consent letter.

21. Notwithstanding any finding or provision herein to the contrary, nothing in the Joint Expedited Motion (including any attachment thereto) or this Order shall impact, preclude, prejudice, alter, affect, impair, render moot, interfere with or waive any rights of any kind or manner whatsoever of Northern Trust or BB&T including, but not limited to objecting to confirmation of any plan on any ground or basis, with all of such rights preserved.

22. The Debtor's attorney shall serve a copy of the instant Order upon all parties which are set forth in Bankruptcy Rule 400l(d)(l); thereafter said attorney shall file a certificate of service.

###

SUBMITTED BY:
Philip J. Landau, Esq.
**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Tel.: 561-443-0800
Facsimile: 561-998-0047
Email:  plandau@sfl-pa.com

Philip J. Landau, Esq. is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.